**Jerome B. Bluhm, Plaintiff-Appellant, v. City of Chicago, et al., Defendants-Appellees.**

**Gen. No. 52,410.**

First District, Fourth Division.

May 7, 1969.

Cohon and Raizes, of Chicago (Jack A. Cohon and Maurice P. Raizes, of counsel), for appellant.

Raymond F. Simon, Corporation Counsel of City of Chicago (Marvin E. Aspen and RocLyne E. LaPorte, Assistant Corporation Counsel, of counsel), and Benjamin C. Duster, of Chicago, for appellees.

MR. JUSTICE STAMOS delivered the opinion of the court.

Plaintiff, Jerome B. Bluhm, sought a declaratory judgment declaring the Chicago Zoning Ordinance as applied to the subject property to be void and unconstitutional. Plaintiff appeals from an adverse judgment entered by the trial court.

The property involved in this matter is a vacant parcel of land located on the south side of 90th Place between South Indiana Avenue and South Prairie Avenue, Chicago, Illinois. It is triangular in shape; bound on the south by the Belt Railway railroad tracks. The size is approximately 132.96 feet along South Prairie Avenue, approximately 355 feet along 9th Place, and runs north-westerly approximately 378 feet 7¾ inches along the Belt

Railway tracks and consists of approximately 24,000 square feet. The Belt Railway tracks are elevated approximately fifteen feet in the rear of the property. The railroad embankment runs diagonally through the neighborhood with the industrial uses being located in an almost continuous band parallel to the embankment.

The area directly north and east of the subject property is improved with single family residences, and zoned R–2. South of and on the other side of the railway embankment the area is zoned R–3 and R–2. Southeasterly of the subject property and adjoining the north railroad embankment there is a group of factories. These include a paint factory, a truck terminal for storage of vehicles, a stone yard and other small factories. Various industries are clustered to the northwest directly across the street (Indiana Avenue) from the subject property.

The subject property has been zoned for manufacturing since the first Chicago Zoning Ordinances in 1923 and in 1947 it was classified to the present M1–1 zoning. Article 10, section 10–3 of the Chicago Zoning Ordinance, 1967, lists over twenty-six permitted uses in the M1–1 classification, such as drugstores, food stores, medical-dental clinics, contractor or construction offices, shops and yards, greenhouses, private clubs or lodges, etc.

Plaintiff is a developer of real estate property who took title to the property from the Belt Railway Company on April 13, 1962. Plaintiff on February 14, 1962, appeared before the Committee on Zoning of the Chicago City Council and requested a change in zoning from M1–1 to R–4, which relief was denied March 1, 1962, after a full hearing in which the intervening petitioners, being owners of the single-family residences in the area of the subject property, appeared.

Plaintiff proposed to build a three-story building containing six, two-bedroom units and twenty-one, one-bedroom units on the property. Plaintiff contends that the highest and best use of the land is for a multiple-dwelling

unit under the R–4 classification rather than the present zoning classification which plaintiff charges is unconstitutional. The City of Chicago and intervening Petitioners contend that the ordinance takes into consideration the location of the property, its relationship to the other property in the area, the suitability of the property for the uses allowed, and that said classification is a reasonable, valid exercise of the governmental power of the city to provide for the public health, safety, comfort, morals and welfare of its citizens.

Plaintiff argues that the property has remained vacant, although efforts had been made to sell the property, but because of its present zoning classification the property is unsaleable. A witness from the Belt Railway testified on behalf of the plaintiff that the railroad embankment makes it difficult for the railroad to service the subject property; the railroad was unable to sell the property, because it was attempting to find a purchaser which it could track-serve. The railroad did not make any effort to sell but merely "put out word that it was available" for sale.

Plaintiff's two expert witnesses testified that the highest and best use of the property would be the proposed R–4 use. Defendants' expert witness testified that the highest and best use would be for single-family residences, and that the property could be used as it is zoned (M1–1) and the present zoning would not have a deleterious effect on the neighborhood, and that the proposed R–4 use would have a definite detrimental effect on the neighborhood. Eighteen witnesses testified on behalf of the intervening petitioners, Chatham Village Association, that as adjacent property owners they were opposed to the proposed R–4 zoning. These witnesses testified to the detrimental effects the proposed zoning would have upon the neighborhood: overcrowding of the schools and neighborhood, increased traffic and depreciation of property values. The president of

140

the Chatham Village Association testified that presently the three public schools in the area were overcrowded and that one of the three was the most overcrowded in the city.

Plaintiff's two expert witnesses testified that the value of the subject property as presently zoned was $12,500 and this was the price plaintiff paid for it. Plaintiff adduced evidence that an R–4 zoning classification would increase the value of the property to $25,000–$30,000 and would be the best and highest use of the land. Defendants' expert testified the best use would be five or six single-family residences on the property, but that it could be used as zoned (M1–1) and that the present zoning does not have a deleterious effect on the single-family homes directly across the street. On cross-examination defendants' expert testified a multiple-family use of the property would impair surrounding property.

 The case of Village of Glenview v. Van Dyke, 98 Ill App2d 118, 123, 240 NE2d 354 (1968) discusses the guidelines to be applied in the determination of the reasonableness of a zoning ordinance:

> "The question of whether a zoning ordinance is arbitrary, unreasonable or capricious in its application to a given parcel of land, or whether it is reasonable and bears a substantial relation to the public welfare, is subject to review by the courts. Running through the multitude of zoning cases appearing in nearly every volume of the recent reports are general rules for deciding this question which are consistent in their restatement and unvarying in their application. Briefly, these rules are as follows: There is a presumption of validity in favor of a zoning ordinance adopted pursuant to a legislative grant; a person assailing such a validity has the burden of proving by clear and affirmative evidence that the ordinance is arbitrary, unreasonable or capricious,

or bears no substantial relation to the public welfare; if it appears from all the facts that there is a difference of opinion concerning the reasonableness of the classification, the legislative judgment is conclusive; among the particular facts and circumstances to be taken into consideration in determining whether a zoning ordinance is so unreasonable and confiscatory as to constitute an unlawful invasion of private rights are the character of the neighborhood, the zoning classification and use of nearby properties; the extent to which property values are diminished by the particular zoning restriction involved, and the gain to the public compared to the hardship on the individual property owner." (Citing cases.)

■ A zoning classification is presumed valid and the party challenging the validity of the zoning classification has the burden of proving by clear and affirmative evidence that the zoning classification is arbitrary or unreasonable. Hartung v. Village of Skokie, 22 Ill2d 485, 177 NE2d 328 (1962). The proof must establish that the zoning classification is arbitrary or unreasonable, not merely that the property could be reasonably zoned under a different classification, or that the court, if it sat as a zoning body, would classify it differently. Menolascino v. Village of Franklin Park, 106 Ill App2d 472, 246 NE2d 122.

In order to meet this burden of proof plaintiff argues that the present zoning classification is inconsistent with the uses and zoning of the surrounding property; the value of the subject property is diminished by the present zoning classification; the destruction of plaintiff's property value does not promote the health, safety, morals or general welfare; there is no gain to the public as compared to the hardship imposed on the plaintiff; the highest and best use of the subject property is the apartment building which plaintiff proposes to construct;

142

and the property has been vacant since prior to 1923 when it was first zoned for manufacturing.

██ The basic inquiry in cases involving assertions that a zoning classification is invalid as applied to the subject property is whether such property is zoned in conformity with surrounding and existing uses. American Oil Co. v. County of DuPage, 58 Ill App2d 48, 206 NE2d 510 (1965). A particular piece of property may acquire the characteristics of the surrounding property and thereby invalidate the zoning classification of the particular property. People ex rel. Chicago Title & Trust Co. v. Reiter, 25 Ill2d 41, 182 NE2d 680 (1962). Plaintiff argues that the subject property takes its characteristic from the residential properties surrounding the subject property. We do not agree. Nearly all of the property on the north side of the railroad embankment and forming an almost continuous band parallel to the embankment is zoned for manufacturing uses. The subject property acquires its characteristics from the railroad embankment rather than from the surrounding residential properties.

██ Plaintiff contends that the zoning classification is arbitrary and unreasonable in that the subject property would have a greater value if the zoning classification was different. The fact that plaintiff's property would be worth more if it was classified as plaintiff contends it should be classified is true in nearly all cases in which a zoning classification is challenged. The mere fact that the property would have a greater value is insufficient in itself to invalidate an otherwise valid zoning classification. River Forest State Bank & Trust Co. v. Village of Maywood, 23 Ill2d 560, 179 NE2d 671 (1962); Reskin v. City of Northlake, 55 Ill App2d 184, 204 NE2d 600 (1965).

 Plaintiff contends that unless a zoning classification promotes the general welfare, destruction of property values make such classification void. We agree.

LaSalle Nat. Bank v. County of Cook, supra. Plaintiff, in his brief, continues his argument "in this case no evidence was introduced to show the existing zoning classification of M1–1 promotes the general public welfare. . . ." The record reveals that little evidence was introduced to show that the zoning classification promotes the general welfare, but even if no evidence was introduced to show how the zoning classification promotes the general welfare this factor has no bearing on this appeal. A zoning classification is presumed valid, that is, it is presumed to be designed to promote the general welfare. Bullock v. City of Evanston, 5 Ill2d 22, 123 NE2d 840 (1954). The evidence which a party must produce to overcome the presumption of the validity of a zoning classification is set forth in McQuillin, Municipal Corporations, Vol 8A § 25.294, p 345:

> "The evidence must relate the unreasonableness, discriminatory character, or other invalidity of the zoning ordinance to the complainant's property; in other words, the proofs must establish that there is no basis in public welfare requiring the restriction and that there is a resulting loss to the property owner."

 Plaintiff has failed to overcome the presumption that the zoning classification is valid and designed to promote the general welfare. The mere fact that the highest and best use of the property may be different from that which it is presently classified combined with the fact that the property would have a greater value if it was classified differently is not sufficient to invalidate a zoning classification. Kellett v. County of DuPage, 89 Ill App2d 437, 231 NE2d 706 (1967). When plaintiff purchased the property it was classified M1–1 and it is reasonable to presume that the price that plaintiff paid for the subject property was commensurate with the zoning classification. Since the property was purchased in light of the preexisting zoning classification, it can-

not be said that the zoning classification diminished the value of the subject property. American Nat. Bank & Trust Co. v. City of Chicago, 30 Ill2d 251, 195 NE2d 627 (1964).

 ██ Nearly all of plaintiff's arguments are concerned with the economics of the subject property. When the plaintiff purchased the property it was classified M1–1 and therefore the plaintiff must be charged with knowledge of the zoning classification. Gammon Co. v. Standard Trust & Savings Bank, 327 Ill 489, 158 NE 810 (1927). While a party who purchases property in the face of the existing zoning classification is not precluded from challenging the validity of the zoning classification, his purchase in the face of the existing zoning classification is one factor to be considered. American Nat. Bank & Trust Co. v. City of Chicago, supra.

 Plaintiff argues that the property is unsaleable as it is presently classified and that the property has remained vacant since prior to the first Chicago Zoning Ordinance in 1923. The fact that land has remained vacant is a factor to be considered in determining the validity of a zoning classification. Miller Lumber Co. v. City of Chicago, 414 Ill 162, 111 NE2d 149 (1953). However, plaintiff has failed to prove that the property is unsaleable or has remained vacant because of the present zoning classification. Plaintiff testified that he attempted to sell the property, but no evidence of what efforts were employed to accomplish a sale was introduced. Plaintiff testified as to negotiations with Canfield Beverage Company; his testimony reveals that the land was not sold because this property was too small for Canfield's purposes. The land was indeed vacant since 1923, but there was no showing in the trial court that the property remained vacant because of the zoning classification. Testimony of plaintiff's witness from the railroad, plaintiff's predecessor in title, is of little benefit to the plaintiff. The witness from the railroad did

not testify as to any concerted endeavor on the part of the railroad to develop or sell the subject property. He further related that the railroad did not advertise the property was for sale but rather merely "put the word out that it was available." The only effort the railroad made to develop or sell the subject property was to find someone that they could track-serve.

The trial court found that the zoning classification bears a reasonable relationship to the public health, safety, comfort, morals and welfare, and that the ordinance is constitutional in its application to plaintiff's property. Upon examination of the record we are satisfied that this finding is supported by the evidence. The judgment is affirmed.

Judgment affirmed.

DRUCKER, P. J. and Mc NAMARA, J., concur.