Du Page Trust Company, Trustee, Plaintiff-Appellant, *v.* The County of Du Page, Defendant-Appellee.

(No. 73-262;

Second District (2nd Division)—September 15, 1975.

Edward Van de Houten, Jr., of Glen Ellyn, for appellant.

John J. Bowman, State's Attorney, of Wheaton (Frank J. Petru and Malcolm F. Smith, Assistant State's Attorneys, of counsel), for appellee.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is a declaratory judgment action, brought to permit certain property located at the northeast corner of Butterfield Road and Park Boulevard, in Du Page County, Illinois, to be used for a neighborhood shopping center, consisting of a supermarket, retail stores, a restaurant, an automobile service station, and an office building. The property is zoned R-3 Single Family Residence District with a special use permit allowing the construction of multiple-family dwellings. In a bench trial the Circuit Court of Du Page County ruled against the plaintiff, Du Page Trust Company as Trustee under Trust No. 500, and in favor of the defendant, the County of Du Page. It held the County's zoning ordinance to be valid as applied to the plaintiff's property, and enjoined the proposed use of the property. The plaintiff has appealed.

The property consists of 8.89 acres with a frontage of 705 feet on Butterfield Road and 848 feet on Park Boulevard. The highest point is at the intersection of Butterfield Road, which slopes down to the east, and Park Boulevard, which slopes down to the north, and the lowest point, in the middle of the east boundary, is 27 feet lower than at the intersection. The proposed shopping center would be screened from adjacent property by existing trees as well as additional trees to be planted.

Butterfield Road is a two-lane highway east and west of Park Boulevard, with four-lane approaches from both the east and the west at the intersection. It has a right-of-way of 200 feet and a posted speed limit of 55 miles per hour. It is a major highway, crossing the county. In 1972 the traffic on it averaged approximately 13,900 vehicles per day east of Park Boulevard and 11,000 vehicles per day west of Park Boulevard.

Park Boulevard has a right-of-way of 100 feet, and has four traffic lanes and a posted speed limit of 50 miles per hour north of Butterfield Road, but only two traffic lanes and a posted speed limit of 40 miles per hour south of Butterfield Road. The traffic on it averaged approximately 4,000 to 5,000 vehicles per day.

The intersection of Butterfield Road and Park Boulevard is controlled by stop-and-go lights. At that intersection there were 18,000 to 20,000 vehicle movements per day.

At the southeast corner of the intersection, directly across Butterfield Road from the plaintiff's property, there is a gasoline service station, and next to that, a food store. At the southwest corner of the intersection there is an existing home occupation. At the northwest corner of the intersection there is a vacant tract of land, and north of that a structure used by a theatrical group, and farther to the north and west, Glenbard South High School and the College of Du Page.

On the east side of Park Boulevard, north of the plaintiff's property, there is a single-family home, and east of that another single-family home. On the north side of Butterfield Road, east of the plaintiff's property, there is a vacant tract and then there are some single-family homes. On the south side of Butterfield Road, east of the gasoline service station and the food store, there are some semipublic uses, including two churches, and then some single-family homes.

A half a mile east on Butterfield Road, at its intersection with Route 53, there is a shopping center consisting of a supermarket, six retail stores, and an automobile service station, at the southwest corner of the intersection. Another automobile service station is located at the northeast corner. Property at the northwest corner may be used as an automobile service station pursuant to *Moist v. County of Du Page*, 10 Ill.App.3d 473, for reasons therein stated.

At the southeast corner of the intersection of Butterfield Road and Park Boulevard, where the service station and food store are located, the area is zoned for business uses, but farther south and east the land is zoned residential. At the southwest corner of this intersection and beyond, the land is zoned residential. North of the plaintiff's property the zoning is residential. The area to the west of the plaintiff's property, on the west side of Park Boulevard, is zoned residential. The tract of land at the northwest corner of the intersection, we have just recently decided, is validly zoned residential and may not be used for a service station. *Gulf Oil Corp. v. County of Du Page*, 24 Ill.App.3d 954.

The property owned by the plaintiff as trustee was originally acquired by the trust beneficiary, Arnold Kramer, an attorney, in 1968 and 1969. The County's zoning ordinance had been in effect since 1935. When the property was purchased by Mr. Kramer, the College of Du-Page and Glenbard South High School, both now lying to the west across Park Boulevard, had not yet been constructed, nor had the gasoline service station at the southeast corner of Butterfield Road and Park Boulevard, nor the shopping center at the southwest corner of Butterfield Road and Route 53, nor the gasoline service station at the northeast corner of Butterfield Road and Route 53. The property is unimproved, but is zoned to permit 120 multiple-family dwelling units to be constructed. Mr. Kramer testified that it would be difficult to market a multiple-family residential development on the site because it is not large enough to allow providing amenities such as tennis courts, putting greens, and swimming pools. He also testified that he had earlier attempted to improve the property with the 120 multiple-family dwelling units that were permitted, but was unable to secure the necessary financing because of the 1969-1970 tight money situation.

The architect who had prepared the plans for the proposed neighborhood shopping center described the buildings he had planned, the parking areas, the driveways, and the arrangements for drainage. He indicated that the highest point of the major buildings would be level with or just slightly higher than the crown of the intersection of Butterfield Road and Park Boulevard. He stated that his firm had previously made a site plan for multiple-family residential use of the property.

A real estate representative for Mobil Oil Corporation testified as to the traffic count he had taken, the number of homes nearby, the plans for a full convenience type service station and the car wash it was to contain, and the location of other service stations in the vicinity. Within a mile and a half of the property, he said, there were from 2700 to 2800 homes, and several hundred additional homes were under construction.

An urban planner testified for the plaintiff regarding the uses and zoning in the area which he described as constituting the sphere of influence on the plaintiff's property. This included uses and zoning south across Butterfield Road, west across Park Boulevard, and east at the intersection of Butterfield Road and Route 53. He testified also regarding a traffic study of the area which he had made. It was his opinion that the use proposed for the plaintiff's property was the highest and best use for that property, by reason of its location at a busy intersection, its size, the tree cover at its north end, the trend of development near the property, the existing uses in the area of influence, and the existing zoning which permitted business uses south of Butterfield Road at Park Boulevard and at Route 53. On cross-examination he stated that he did believe Park Boulevard was a buffer, and that Route 53 could be but was not a buffer. He granted that the land use to the north, northeast, and east of the plaintiff's property north of Butterfield Road was all single-family residential; that single-family residential use extended north all the way to Roosevelt Road; and that there was no commercial use or industrial use in an area bounded by Park Boulevard on the west, Butterfield Road on the south, and Route 53 on the east.

A real estate broker and appraiser also gave his opinion, on behalf of the plaintiff, that the highest and best use would be a retail or commercial use or something similar to a neighborhood shopping center. He valued the property at $35,000 per acre as presently zoned, and $85,000 per acre if permitted to be used for commercial purposes. He felt that some depreciation of adjacent property would be caused by the two retail stores proposed, but thought that if the proposed development were screened sufficiently in that location, the depreciation would be very little. He stated during cross-examination that Route 53 and Butterfield Road could be considered buffers, and said that he could give some consideration to Park Boulevard's being a buffer.

On behalf of the County, two owners of nearby residences gave testimony as to the location, cost, current value, and anticipated depreciation of their homes. One of them said that if the proposed use of the plaintiff's property were allowed, "I don't think my property would be valued as high as I value it now," and the other, "I would try to get out of there."

A city and regional planner then testified for the County. He identified the various single-family developments in the area, and gave his opinion that the community was adequately serviced by existing commercial facilities. He stated that Park Boulevard, Butterfield Road, and Route 53 were all effective buffers, being wide, carrying fast traffic, and allowing little influence or effect from a land use on one side upon land use on the other side. He described the neighborhood in which the plaintiff's property was situated as being the area bounded by Park Boulevard on the west, Butterfield Road on the south, Route 53 on the east, and Glen Valley, a local street, on the north. This, he said, was a residential neighborhood, consisting entirely of single-family homes, many being very exclusive estate-type homes, with very high market values.

It was this planner's opinion that the highest and best use for the plaintiff's property was multiple-family residential. He based his opinion on the property's being situated within a residential neighborhood, on there being no commercial developments inside that area, and on the adjoining thoroughfares' being buffers. In addition he noted that property to the south across Butterfield Road was about to be improved with a 203-unit multiple-housing development on a little less than 12 acres, and this he viewed as pointing up a trend toward multiple-family residential land use in the general area of the plaintiff's property. He thought that the proposed gas station, and the car wash it was to have in one bay of the station, would represent a serious intrusion of an intensive commercial use into a very substantial single-family neighborhood. He considered the plaintiff's property to be ideally suited for multiple-family development, being gently rolling land with a natural tree cover which provided esthetic quality for multiple-family use.

The trial court in its judgment sustaining the validity of the County's ordinance as applied to the plaintiff's property, found that the land uses and the zoning of surrounding property were predominantly residential; that Park Boulevard north of Butterfield Road was a buffer; that Butterfield Road east of Park Boulevard to Route 53 was a buffer; that Route 53 north of Butterfield Road was a buffer; that the area of influence was that area bounded on the west by Park Boulevard, on the south by Butterfield Road, on the east by Route 53, and on the north by Glen Park Road; that this area was entirely residential in character, and the plaintiff's property, within it, was residential in character; that the commercial uses just outside this area, across Park Boulevard, Butterfield

Road, and Route 53, had little or no influence on the plaintiff's property; that the proposed use would be an intrusion of an intensive commercial use into an area that was residential; and that the highest and best use for the plaintiff's property was the use for which it was zoned, R-3 residential, with a special use permit to allow construction and use of 120 multiple-family units.

The plaintiff takes the position that the character and trend of land uses in the vicinity of its property are not residential; that there are automobile service stations and other commercial uses and commercial zoning in the area of influence; that great hardship is caused to the owner of the property by the zoning restrictions, without any gain to the public; that adjoining property would not be depreciated by the proposed use; that there is insufficient space for amenities to make the plaintiff's property marketable for residential use; that the abutting highways are too busy for the plaintiff's property to be residential; and that the proposed use is a reasonable use in view of the trend in the area to commercial uses.

The County's position is that the area surrounding the plaintiff's property is almost entirely residential; that there are not enough commercial uses nearby to characterize the neighborhood as commercial, and Route 53 is too far away to have any influence; that property to the south across Butterfield Road is to be residential, so that the trend in the area is toward multiple-family residential rather than commercial use; that multiple-family housing on the plaintiff's property would shield the single-family residences to the northeast from the commercial uses at the intersection of Park Boulevard and Butterfield Road; that there was testimony from both sides as to the likelihood of some depreciation of nearby property if the proposed use of the plaintiff's property were allowed, and other persons in the neighborhood have the right to rely on continuation of the existing zoning of the plaintiff's property; that it was not proved that the plaintiff's property cannot be developed profitably under the existing residential zoning; that the property is suitable for residential use despite the heavy traffic on the adjacent highways, which do not impart a commercial character to the property; that the existing commercial uses in the general area are sufficient for the area; and that where there is room for a fair difference of opinion as to the reasonableness of a zoning classification, the legislative body's judgment should be allowed to prevail and the zoning ordinance should be upheld.

■ ■ We have reviewed the record to determine whether, as the plaintiff claims, the County's zoning ordinance is unreasonable and invalid as to the plaintiff's property. A presumption exists in favor of the validity of a zoning ordinance, and to overcome it the plaintiff must

establish by clear and convincing evidence that the ordinance, as applied to the plaintiff's property, is unreasonable and has no substantial relation to the public health, safety or welfare. (*La Salle National Bank v. City of Evanston*, 57 Ill.2d 415, 428.) In the event that the evidence accommodates a legitimate difference of opinion, the legislative judgment must prevail. (*Standard State Bank v. Village of Oak Lawn*, 29 Ill.2d 465, 471; *Anderson v. City of Geneva*, 28 Ill.App.3d 468, 472.) A number of factors are said to merit consideration in passing on the validity of a zoning ordinance (*La Salle National Bank v. County of Cook*, 12 Ill.2d 40, 46-47), but of paramount importance is whether the property is zoned in conformity with the uses and the zoning of nearby property. *Sutter v. Village of Mundelein*, 27 Ill.2d 589, 592-93.

The evidence, in our view, amply supports the findings of the trial court that Park Boulevard and Butterfield Road, being heavily traveled, high-speed highways, are buffers in the vicinity of the plaintiff's property, and so the few commercial uses located across those highways can be considered to have little or no influence on the property of the plaintiff; that Route 53 is too far away for the commercial uses at its intersection with Butterfield Road to have any substantial influence on the plaintiff's property; and that the area east of Park Boulevard and north of Butterfield Road is residential for a considerable distance, and is the area which influences the plaintiff's property and gives it a residential character. Furthermore, the evidence indicates that there is a trend toward residential development even across Butterfield Road to the south, and that in the area to the west across Park Boulevard all the uses are either residential uses or uses which are permitted in residential districts. Therefore it is our opinion that the plaintiff's property is presently zoned in conformity with the uses and the zoning of property lying nearby.

■■ It cannot be maintained, we believe, that the busy highways running alongside the plaintiff's property show it to be unsuitable for residential use. Streets may form an appropriate boundary for a residential district (*Bennett v. City of Chicago*, 24 Ill.2d 270, 273), and it has often been held that the fact that property is located upon a main traffic artery does not invalidate a zoning ordinance which restricts its use to residential purposes. *Cosmopolitan National Bank v. Village of Mount Prospect*, 22 Ill.2d 463, 469.

The plaintiff points out that the difference between the value of its property as presently zoned and the value it would have for the proposed use is very substantial. However, there is commonly a substantial valuation differential in zoning cases, and this is not in itself decisive. (*Ryan v. County of Du Page*, 28 Ill.2d 196, 198.) Proof of a very large

difference in value is in itself insufficient to overcome the presumption of validity of the ordinance. (*Jackson v. County of Du Page*, 10 Ill.App. 3d 497, 500.) Although the plaintiff offered evidence that the zoning ordinance prevented making a substantial profit, it was not proved that there would need to be any actual loss (*Grobman v. City of Des Plaines*, 59 Ill.2d 588, 595), there being testimony that the property was a desirable site for residential use, that a multiple-family residential development was earlier planned for it, and that a multiple-family development was currently planned for a site across Butterfield Road which was not much larger than the plaintiff's property.

■■ The argument is advanced by the plaintiff that there is little evidence of public benefit from the present restrictions on use of its property, but rather, evidence that trees along the north end would shield adjoining residential areas from any depreciating effect the proposed project might otherwise have. However, there was testimony from witnesses for both sides that some amount of depreciation would probably be caused to nearby property, if a commercial use were allowed to be made of the plaintiff's property as proposed. The owners of other property in the adjacent residential area to the north and east have the right to rely on continuance of the present residential zoning of the plaintiff's property unless a change is required for the public good (*Urann v. Village of Hinsdale*, 30 Ill.2d 170, 176), and to be protected against gradual erosion of the boundaries of their residential area. (*Bolger v. Village of Mount Prospect*, 10 Ill.2d 596, 603.) The plaintiff did not show that the planning of the neighborhood for residential use did not have a substantial relation to the public welfare. See *Zenith Radio Corp. v. Village of Mount Prospect*, 15 Ill.App.3d 587, 596-97.

As we recently concluded with respect to the property located at the northwest corner of the same intersection (*Gulf Oil Corp. v. County of Du Page*, 24 Ill.App.3d 954, 959), we believe the most that can be said for the plaintiff's case is that it presents a debatable question as to the reasonableness of the zoning ordinance, and so the legislative judgment must prevail. We hold, therefore, that the plaintiff has not sustained its burden of overcoming with clear and convincing evidence the presumptive validity of the zoning ordinance, and so the trial court was correct in upholding the ordinance as applied to the plaintiff's property. Accordingly, the judgment of the Circuit Court of Du Page County is affirmed.

Judgment affirmed.

RECHENMACHER, P. J., and T. MORAN, J., concur.