CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY OF CHICAGO *et al.*, Plaintiffs-Appellants, *v.* THE VILLAGE OF LIBERTYVILLE, Defendant-Appellee.

Second District (1st Division)   No. 75-320

Opinion filed October 7, 1976.

Leonard Bosgraf, of Chicago, for appellants.

Ellis E. Fuqua, of Waukegan, for appellee.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

Plaintiffs appeal from an order of the trial court dismissing their declaratory judgment action. The trial court found (1) that the presumption of validity in favor of the existing zoning ordinance had not been overcome by clear and convincing evidence, and (2) that the ordinance establishing the B-3 zoning classification for plaintiffs' property was not arbitrary, discriminatory or unreasonable and that that particular classification did bear a reasonable relation to the public health, safety, morals and welfare of the community and was therefore valid. Plaintiffs raise several points on this appeal. First, they argue that they overcame the presumption of validity of the zoning ordinance. Second, they contend that the B-3 classification is unconstitutional and void as applied to their property, and that the rezoning of the property into that classification is unreasonable and confiscatory due to the lack of need for such property. Plaintiffs further contend that the property takes its character from the heavily traveled highways and intersection at which it is located, especially the gasoline stations and other commercial uses on the south side of the intersection. Finally, plaintiffs argue that the rezoning of their property after they had filed suit for declaratory judgment, and without actual notice to them, was unfair and constituted a denial of due process.

The subject property is located on the northeast corner of Butterfield

Road and Park Avenue (Illinois State Highway 176) in the Village of Libertyville. Butterfield Road runs north and south and Park Avenue is a major thoroughfare running generally easterly and westerly through the Village of Libertyville. There are traffic signals located at the intersection of Butterfield and Park. The property is an irregularly shaped parcel about one acre in size with a frontage of approximately 263 feet on Butterfield Road and approximately 145 feet on Park Avenue.

Plaintiffs Continental Illinois National Bank and Trust Company of Chicago and Genevieve N. Gratz, as trustee, are the owners of the subject property and plaintiff Dominion Development Company is the contract purchaser, subject to rezoning of the property for use as a neighborhood convenience center. Dominion proposes to erect upon the south portion of the subject site an automobile service station and upon the north portion a small building to house one or two retail stores. At the time the contract was signed the property was zoned R-6 for single family residences. Thereafter the plaintiffs petitioned to have the property rezoned into the B-2, service and wholesale business classification, which would permit erection of the proposed structures. On March 7, 1972, the Board of Trustees of the Village denied plaintiffs' application. On May 2, 1972, plaintiffs filed this action for declaratory judgment, seeking that the classification of the subject property in the R-6 single-family residence district be declared void and that they be permitted to develop their property as proposed. Thereafter, on May 23, 1972, the Village of Libertyville changed the zoning classification of plaintiffs' property from R-6 to B-3. The B-3 classification permits only business and professional offices, including medical clinics, pharmacies selling only medicine and medical supplies when located in a medical clinic, and beauty and barber shops. Dwelling units are allowed in the B-3 classification, provided they are located above the first floor and above a permitted business use. After plaintiffs discovered that the property had been reclassified they filed an amendment to the complaint for declaratory judgment, asking that the B-3 classification be declared invalid as applied to their property.

■■ When the action came to trial in March 1975, the evidence adduced by the parties on both sides was aimed at determining the validity of the B-3 classification. On this appeal, however, plaintiffs argue in one of the points raised in their brief, that the rezoning of the property after the suit had been filed and without actual notice to them was unfair and constituted a denial of due process. We find that this issue was not properly presented to the trial court. Our review of the record indicates that the only time the issue was raised to any substantial degree was at the beginning of the trial during a colloquy between counsel for both parties and the court concerning stipulations as to the admissability of exhibits.

Defendant's counsel twice indicated his concern with the possibility that plaintiffs might seek to raise issues concerning the validity of the procedures by which the rezoning was accomplished. Although plaintiffs' counsel argued vigorously that the proposed exhibits were relevant for a number of reasons, none of his statements indicates that the plaintiffs were, in fact, contesting the validity of the procedures followed by the defendant in adopting the ordinance. In addition, the plaintiffs did not raise this issue in their pleadings and it was not ruled upon by the trial court in the order from which the plaintiffs have appealed. For these reasons we hold that this issue is not properly before us for review. *Urann v. Village of Hinsdale* (1964), 30 Ill. 2d 170, 195 N.E.2d 643.

We turn, therefore, to the other evidence bearing upon the validity of the B-3 classification as applied to plaintiffs' property. As previously stated, the subject property is located on the northeast corner of the intersection of Butterfield and Park. Directly north of plaintiffs' property on the east side of Butterfield, and in the same block, are single-family residences, the southernmost of which adjoins the north edge of plaintiffs' property. Directly east of plaintiffs' property, and in the same block, are more single-family residences. The back property lines of two of these residences adjoin the east edge of plaintiffs' property. The houses on these lots, however, face away from the subject site. Farther to the east on the north side of Park the land is zoned for development of single-family residences.

To the west of plaintiffs' property across Butterfield the predominant zoning and development is also single-family residences. Three of these residences face portions of the subject property. The only exception to the single-family residential zoning is a parcel located directly across from plaintiffs' property on the northwest corner of the intersection of Butterfield and Park. That block on Park between Butterfield and Harding is bisected by an alley running parallel to Park, and from the alley south to Park is zoned B-3, the same zoning classification as plaintiffs' property. This B-3 property is vacant except for a single-family residence in the middle of the block.

Other than the B-3 properties already described, all of the commercial zoning and development at the intersection of Butterfield and Park is on the south side of Park. On the southeast corner of the intersection there is a Citgo gasoline station. East of the Citgo station are several buildings containing retail businesses of various sorts, including a grocery store, laundromat, restaurant, radio store and a loan office. These properties are all zoned B-2. Directly to the east of the B-2 property is a parcel zoned B-1 which contains more offices, a warehouse and an equipment rental store. Adjoining these properties on the east and also having B-1 zoning is a

building which has been converted into professional offices. Continuing' to the east are residences and another vacant parcel zoned B-3 which is on the corner of Park and Dymond.

Starting at the southwest corner of the intersection of Park and Butterfield there is an E-Z Go gasoline station, a small parcel which is vacant and a Dairy Dream ice cream drivein. These properties are zoned B-1. Directly to the south of all the property hereinbefore described on the south side of Park is a vacated railroad right-of-way which acts as a buffer between the commercial area and more single-family homes to the south.

As might be expected in a case of this type, the evidence of the two parties on most of the important issues was in conflict. Plaintiffs' witnesses testified the highest and best use of the subject property would be for a neighborhood convenience center of the type proposed to be erected thereon by Dominion Development Company. Their witnesses were also of the opinion that the proposed development would have little or no depreciating effect on the surrounding residential properties, essentially because the properties that face or adjoin the subject property already are affected by and subject to the adverse influence of the existing commercial uses on the south side of Park. Plaintiffs also introduced testimony concerning lack of need for further office space, specifically professional offices allowed under the B-3 zoning in the Village of Libertyville. There was testimony concerning unsuccessful efforts to sell both the subject property and a piece of property on the corner of Harding and Park which has been listed for sale as B-3 property for several years. Although plaintiffs emphasize this as evidence of no need for B-3 property and argue that the parcel on the corner of Harding and Park is comparable to the subject property, we note that the latter parcel is approximately one-third the size of the subject property and that there was testimony that its size adversely affected its marketability. There was further testimony concerning the number of vacant professional offices existing in Libertyville, especially in the newer professional office buildings. One of the plaintiffs' experts also testified that the subject property was worth approximately $40,000 as zoned whereas it would be worth three times that much, or approximately $120,000 under the proposed zoning.

The only portion of the testimony on behalf of the plaintiffs which was not contradicted by defendant's witnesses was the valuation of the property under the existing and proposed zoning classifications. Defendant's witnesses were of the opinion that the highest and best use of the subject property was for professional offices of the type that might be constructed under the B-3 zoning classification. They felt that there was a need for professional offices in Libertyville and introduced testimony to

the effect that the vacancy rate for professional offices in Libertyville was at or below the normal vacancy rate for such properties. One of defendant's witnesses explained the zoning at the corner in terms of buffers. The residential area to the south of the intersection of Park and Butterfield is separated from the commercial uses on the south side of Park by the abandoned railroad right-of-way. Although defendant's witnesses admitted that the subject property is not suitable for single-family residences of the type surrounding it, they felt that the type of buildings and the uses which could be made of them under the B-3 zoning were more compatible with the existing residential development than the heavier and more intense B-1 and B-2 uses on the south side of Park and, therefore, the subject property and the property immediately across from it on the northwest corner of the intersection would serve as a transition or buffer between the residential areas on the north and the heavier commercial uses on the south side of Park. Although the testimony is not entirely clear on the point, defendant's witnesses seemed to be of the opinion that the proposed development would have at least some depreciating effect on the surrounding residential property which abuts or faces the subject site.

As the Illinois courts have consistently stated, there is a presumption favoring the validity of a zoning ordinance and the party attacking it must prove by clear and convincing evidence that the classification is arbitrary and unreasonable as applied to the subject property. (*Urann v. Village of Hinsdale; Singer v. City of Highland Park* (1975), 31 Ill. App. 3d 1071, 335 N.E.2d 585.) The factors to be considered in determining the validity of a zoning ordinance are also well established. (*Chicago Title & Trust Co. v. Village of Wilmette* (1963), 27 Ill. 2d 116, 188 N.E.2d 33; *Duggan v. County of Cook* (1975), 60 Ill. 2d 107, 324 N.E.2d 406.) No single factor is controlling, however, and each case must be decided upon its own set of facts and circumstances. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 145 N.E.2d 65; *La Salle National Bank v. Village of Harwood Heights* (1971), 2 Ill. App. 3d 1040, 278 N.E.2d 114.

■■■ While we have read and considered the cases cited by both parties, we do not find that any of them are dispositive of the issues presented herein. As defendant's brief correctly points out, most of the cases cited and relied upon by plaintiffs were cases in which the decision of the trial court was affirmed whether it held the zoning ordinance valid or invalid. In *Jackson v. County of Du Page* (1973), 10 Ill. App. 3d 497, 501, 294 N.E.2d 773, 775-76, we said:

"Where, as here, there is room for a fair difference of opinion as to the reasonableness of the zoning classification in question, the ordinance will not be disturbed. [Citations.]

After a consideration of the entire record, we have concluded

that there was no error in the trial court's finding in favor of the validity of the ordinance."

In this case, when the trial judge entered the order upholding the validity of the ordinance, he necessarily found that the character of the subject property was not determined solely by the commercial uses on the south side of Park. With this we must agree, especially since there are single-family residences on three sides of the property. See also *Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 335 N.E.2d 61.

Recently, in *Wheeling Trust & Savings Bank v. County of Lake* (1975), 31 Ill. App. 3d 636, 642, 333 N.E.2d 705, 710-11, we said the following, which is also applicable to the facts presented in this case:

> "Because of the conflicts in testimony common in zoning cases, the credibility of the witnesses is of great importance. Accordingly, in a trial without a jury the trial judge is in a superior position to determine the weight to be accorded the testimony and his finding should not be disturbed unless contrary to the manifest weight of the evidence. [Citations.] We cannot say that the findings of the trial judge are against the manifest weight of the evidence and we therefore must affirm the judgment."

We find this to be true in the instant case and do not find the decision of the trial court to be contrary to the manifest weight of the evidence and do not feel constrained to substitute our judgment for that of the trial court.

Therefore, the judgment of the trial court is affirmed.

Affirmed.

SEIDENFELD and HALLETT, JJ., concur.