FAIRFIELD SAVINGS AND LOAN ASSOCIATION *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF CHICAGO, Defendant-Appellant.

First District (3rd Division)   No. 61758

Opinion filed October 7, 1976.—Modified upon denial of rehearing February 2, 1977.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel Pascale and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellant.

Cornelius J. Harrington, Jr., and Gary M. Elden, both of Kirkland & Ellis, and Daniel L. Houlihan, all of Chicago, for appellees.

Mr. JUSTICE McGLOON delivered the opinion of the court:

This is a declaratory judgment action brought by Fairfield Savings and Loan Association (hereinafter referred to as Fairfield) as nominee of the other plaintiffs seeking a declaration of plaintiff's right to develop a certain plot of land as proposed. Plaintiff's proposal consisted of a combination residential-business land use which was not in conformity with the existing R4, General Residence District, zoning classification of the subject property. After a trial, the trial court issued an order declaring that the R4 zoning classification was void as applied to the subject property and that plaintiffs shall have the right to erect the office building as proposed and a multiple-family development complying with the R4 zoning classification's density requirement. It is from this order that defendant appeals.

The City of Chicago makes the following contentions in this appeal: (1) that the judgment of the trial court invades the legislative function; and (2) that the City of Chicago reasonably exercised its legislative power in classifying the property R4 and that the public welfare does not require a change to office uses. In support of this latter contention the City argues (a) that plaintiffs have not overcome the presumptive validity of the zoning ordinance; (b) that business activities are properly excluded from a residential district; (c) that the residential uses and zoning of the surrounding area, their uniformity and long establishment are of paramount importance in determining the propriety of the zoning classification; (d) that the subject property can be developed economically under the existing R4 zoning classification; and (e) that plaintiff Fairfield acquired title with knowledge of the existing zoning restrictions.

Fairfield argues (1) that the trial court's order was framed with reference to the record before it and in accordance with what the record showed was a reasonable use in the public interest; and (2) that the trial court's decision was not against the manifest weight of the evidence.

We affirm in part and reverse in part.

The subject property, approximately eight acres in size and rectangular in shape, is located in the City of Chicago and bounded on the north by Catalpa Street, on the east by Cumberland Avenue, on the south by Catherine Street and on the west by Chester Street. On February 16, 1973, prior to the commencement of the instant suit, the property was acquired from the Skoufes estate by Fairfield at a cost of $2,000,000. Of this total cost $750,000 was for the western half of the subject property and $1,250,000 for the eastern half. The contract of sale provided that as to the eastern half of the subject property the purchaser's obligation to purchase was contingent upon the seller's securing zoning relief to allow business development.

Plaintiff Fairfield proposed to develop the eastern half of the subject

property facing Cumberland Avenue with a 10-story office building at a cost of $7,000,000. The proposal indicated that this eastern section would be landscaped with a fountain and plaza in front off of Cumberland and would contain 569 parking spaces screened from the sight of passersby through special architecture and landscaping. On the western four acres of the subject property plaintiff proposed to build a 228-unit apartment complex consisting of three seven-story buildings of 76 units each with alternate proposals for parking consisting of 327 or 338 parking spaces. The proposal indicated that the residential parking would be underground and covered by a landscaped deck. The R4 zoning classification would permit a maximum of 194 units on this western four-acre plot with a minimum of one parking space per unit.

The subject property is located approximately three miles southeast of O'Hare International Airport, south of the Kennedy Expressway, and approximately 600 feet from the expressway exit at Cumberland Avenue. Immediately south of this exit, Bryn Mawr Avenue intersects with Cumberland Avenue. At the northeast corner of the Bryn Mawr-Cumberland intersection is an 11-story motel with a restaurant and structural parking. On the southeast corner is a service station which occupies 1.67 acres and has two sets of pumps, a parking area, a garage and service building. To the north of Bryn Mawr and west of Cumberland is a 10-story office building. East of this office building on the northwest corner of Bryn Mawr and Cumberland is a tract of vacant land. In 1969 the City of Chicago approved new zoning for this vacant tract which would allow Hilton Hotels to build on that tract two hotels with 1000 rooms, a convention center, a department store, an apartment complex and a parking structure. To the north of the above proposed convention center development, the City of Chicago proposes to build a parking facility to accommodate 800 automobiles, a Kiss-n-Ride facility and three bus terminals.

On the southwest corner of Bryn Mawr and Cumberland are residences which front on Bryn Mawr and comply with the applicable R4 zoning classification. These residences are separated from Cumberland by a street (the Bryn Mawr loop which extends from Bryn Mawr and merges into Cumberland south of these residences) and a two-lot depth of vacant land. Separating the subject property from the above residences is a vacant and unimproved lot which is zoned R4. Immediately west and northwest of the subject property the land is developed in accordance with the applicable R4 zoning classification.

Immediately south of the subject property and bordering on Catherine Street is the Catherine Courts complex. This complex consists of four seven-story buildings separated from Cumberland by a shopping center, zoned B4 and consisting of two buildings. The first building in the

shopping center houses a liquor store, grocery store, beauty salon, barber shop and cleaners. The second building houses a drug store and offices. In front of one of these buildings is a parking lot which services the shopping center. Across from the shopping center is a newly built fire station and south of this fire station is residential property developed in accordance with applicable R3 zoning requirements. North and west of the fire station extending up to the gas station on the southeast corner of Bryn Mawr and Cumberland the property is zoned R2. A small portion of this property directly west and immediately to the north of the fire station has been developed in accordance with this R2 zoning requirement. A large portion of this property is undeveloped and has been designated by the Chicago Park District to be a park.

At trial, the alderman for that area testified that plaintiff's proposal would have a negative effect on parking, traffic and property values. Three residents of the area gave similar testimony concerning the congestion and traffic problems plaintiff's proposal would create if allowed to become a reality.

Plaintiff called as a witness, Mr. Donoghue, an expert on traffic who testified that the present parking situation was extremely congested, that he had studied the area in question and had made recommendations to the developer so that the proposed development would improve parking and traffic in the area. Mr. Donoghue testified that these suggestions were adopted by the developer.

Both plaintiff and defendant presented testimony of land use experts. Plaintiff's first expert, Mr. Zeitlin, testified that plaintiff's proposed use is the highest and best use of the subject property and that the present R4 zoning is arbitrary and capricious. Mr. Zeitlin reasoned that the property is situated on Cumberland, a regional arterial road, which provides ideal access to the Kennedy Expressway and Illinois Tollroad System and which gives the subject property a unique status especially favorable to commercial rather than residential development. Mr. Zeitlin further indicated that the trend of development in the area is in favor of larger and primarily commercial buildings and that plaintiff's proposal would provide more open space and a lesser density than that authorized under R4 zoning.

The City's land use expert, Mr. McKinnon, testified that the subject property is properly zoned R4, that all of the uses in the area conform to R4 zoning and that plaintiff's proposed construction of a 10-story commercial building would be an intrusion on the residential character of the neighborhood. Mr. McKinnon did not feel that the commercial construction around the Cumberland-Bryn Mawr intersection could have any effect on the subject property. He stated that streets were the basic dividing lines and that property lines have been used in isolated instances.

Mr. McKinnon did feel that the Catherine Courts shopping center immediately south of the subject property could have an influence on the subject property. However, he deemed that shopping center as a mere auxiliary use for the Catherine Courts apartment complex. Mr. McKinnon further felt that if new commercial buildings were needed to service potential residential development in the area, the commercial buildings should be built along Bryn Mawr.

Plaintiff called another land use expert, Mr. Laurence, to rebut Mr. McKinnon's testimony. Mr. Laurence stated that rear lot lines are frequently used as lines of zoning demarcation and indicated the fact that the subject property fronted on Cumberland was of crucial importance. Mr. Laurence reasoned that due to Cumberland's relationship with the Kennedy Expressway it was more sensible to allow commercial development on Cumberland than on Bryn Mawr.

Both plaintiff and defendant also presented expert testimony concerning the value of the subject property under the R4 zoning classification and the value the subject property would have if developed in accordance with plaintiff's proposal. The City's appraiser, John McNamara, valued the eastern parcel at $965,000 and the western parcel at $970,000 if developed in accordance with the R4 zoning. Mr. McNamara arrived at these figures by multiplying $5000 per unit by the number of units, 194 and 193 respectively, allowable under R4 density requirements. Mr. McNamara, however, felt that the value of the western parcel would be the same whether developed with 194 or 228 units. He further believed that the eastern parcel would have the same value whether developed for residential or commercial purposes. Mr. McNamara went on to state that the property could be economically and practically developed under the current R4 zoning.

Plaintiff's expert appraiser, James Curtis, testified that the property under R4 zoning is worth $1,548,000 ($4000 per unit times 387 units). Under plaintiff's proposal, Mr. Curtis placed a value of $1,100,000 on the eastern half of the property and a value of $900,000 on the western portion ($4100 per unit times 228 units). In Mr. Curtis' opinion the highest and best use for the subject property was that contained in plaintiff's proposal. However, Mr. Curtis indicated on cross-examination that the eastern portion of the subject property could be developed under the present R4 zoning.

Mr. Opelka, another qualified appraiser, was called by plaintiff to describe the proposed development. When asked on cross-examination to appraise the property, Mr. Opelka estimated the eastern half of the property to be worth between 1.2 and 1.4 million dollars and the western half to be worth between .9 and 1.1 million.

After Fairfield's offer of $2,000,000 for the subject property, the next

best offer was 1.6 million dollars under the existing R4 zoning classification. The subject property has been used for agricultural purposes since its R4 zoning in 1966.

After hearing all the above evidence, the trial court entered a declaratory judgment order which described both the business and residential portions of plaintiff's proposal as found in the plans submitted by the plaintiff. The order went on to find in pertinent part that the R4 zoning classification as applied to the subject property was arbitrary and capricious and had no substantial relation to public health, safety, morals or general welfare; that as applied to the subject property the zoning ordinance was void; and that the highest and best use of the subject property was plaintiff's proposed business-residential development. The order also limited the number of residential units on the western parcel to 194 and provided that plaintiffs, or anyone claiming under them, have a clear legal right to the issuance of building permits by the Building Department of the City of Chicago in order to construct their residential-business land use.

The City first argues that the R4 zoning classification of the subject property was a reasonable exercise of legislative power and that the public welfare does not require a change to commercial uses. The plaintiff counter argues that the trial court's decision invalidating the R4 zoning as applied to the subject property is not against the manifest weight of the evidence. Plaintiff contends that the cornucopia of transportation systems in close proximity to the subject property makes the eastern parcel thereof far more suitable for an office building than for residential buildings. Plaintiff points out that the subject property is within a three-minute drive of O'Hare Airport, that the City has proposed a rapid transit system and a parking terminal one-quarter mile north of the subject property, that the Kennedy Expressway is less than 30 seconds from the subject property, and that the property fronts on Cumberland Avenue, an arterial roadway.

■■ ■ Plaintiff further argues that the growing number of nearby commercial uses tends to establish the character of the property as commercial. Plaintiff points to the commercial development along Bryn Mawr and the Bryn Mawr-Cumberland intersection and also the shopping center in the Catherine Courts complex which is farther from the expressway than the subject property.

A presumption exists in favor of a zoning ordinance, and to overcome this presumption the plaintiff must establish by clear and convincing evidence that the ordinance, as applied to plaintiff's property, is unreasonable and has no substantial relation to the public health, safety or welfare. (*Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 335 N.E.2d 61.) Plaintiff must prove that the zoning classification is

arbitrary and unreasonable and it is not enough to show hardship or that the desired use would not substantially impair public health, safety or welfare. (*Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402, 178 N.E.2d 358.) Plaintiff must establish that the zoning ordinance is arbitrary and unreasonable, not merely that the property could be zoned under a different classification or that the court would classify it differently. (*Bluhm v. City of Chicago* (1969), 110 Ill. App. 2d 136, 249 N.E.2d 108.) If there exists a debatable question as to the reasonableness of the zoning restrictions, then the zoning ordinance must prevail. (*Anderson v. City of Geneva* (1975), 28 Ill. App. 3d 468, 328 N.E.2d 668.) Although each case must be decided on its own particular facts (*La Salle National Bank v. City of Evanston* (1962), 24 Ill. 2d 59, 179 N.E.2d 673), generally a determination of the validity of a zoning ordinance involves the consideration of numerous factors. These factors are delineated as follows in *Anderson v. City of Geneva* (1975), 28 Ill. App. 3d 468, 470, 328 N.E.2d 668, 670:

> " * * * the existing uses and zoning of nearby property, the extent to which property values are diminished by the particular zoning restrictions, the extent to which the destruction of property values of the plaintiff promotes the health, safety, morals, or general welfare of the public, the relative gain to the public as compared to the hardship imposed upon the individual property owner, the suitability of the property for the zoned purposes, and the length of time the property has been vacant as zoned considered in the context of land development in the area in the vicinity of the property. (*La Salle National Bank v. County of Cook,* 12 Ill. 2d 40, 46-47.)"

However, of paramount importance is whether the property is zoned in conformity with the uses and the zoning of nearby property. *Sutter v. Village of Mundelein* (1963), 27 Ill. 2d 589, 190 N.E.2d 321.

■■ While the area in question is surrounded by a cornucopia of transportation systems, is in close proximity to commercial uses and O'Hare International Airport, and borders on an arterial roadway, the record reflects that the R4 zoning classification is in conformity with existing uses and zoning in the area. Although the above factors cited by plaintiff merit consideration in a determination of whether or not the zoning ordinance is arbitrary and capricious, they are by no means determinative. The mere fact that adjacent property is zoned for a less restrictive use does not render the zoning classification invalid. (*La Salle National Bank v. City of Evanston* (1962), 24 Ill. 2d 59, 179 N.E.2d 673.) Similarly, the fact that there are commercial uses very near a residentially zoned area is not sufficient to render a zoning classification unreasonable or capricious. (*Littlestone Co. v. County of Cook* (1974), 19 Ill. App. 3d

222, 311 N.E.2d 268.) Furthermore, the fact that the subject property fronts on an arterial roadway does not invalidate the zoning ordinance. As stated in *Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993, 999, 335 N.E.2d 61, 66:

> " * * * Streets may form an appropriate boundary for a residential district (*Bennett v. City of Chicago*, 24 Ill. 2d 270, 273), and it has often been held that the fact that property is located upon a main traffic artery does not invalidate a zoning ordinance which restricts its use to residential purposes. *Cosmopolitan National Bank v. Village of Mount Prospect*, 22 Ill. 2d 463, 469."

It is true that the above factors should be considered together and plaintiff argues that considered together they give the subject property a character commercial in nature. However, the record reflects that with the exception of the small shopping center in the Catherine Courts complex, the area bordering Bryn Mawr and at the Bryn Mawr-Cumberland intersection, the entire area surrounding the subject property is zoned residential. Certain portions of this residentially zoned area are developed residentially, other portions remain undeveloped. The fixing of zoning boundary lines, unless arbitrary or capricious, is a legislative determination. (*Dallner v. County of Du Page* (1973), 15 Ill. App. 3d 287, 304 N.E.2d 168 (abstract opinion).) The instant record denotes that the R4 zoning classification is in conformity with the zoning and uses of the area surrounding the subject property and does not support the trial court's finding that the R4 classification is arbitrary or capricious.

We note that there is in the area surrounding the subject property considerable acreage of vacant land. If plaintiff's proposal were allowed to become a reality every vacant lot in the area would become a threat to the residents in the area. See *Elmhurst National Bank v. City of Chicago* (1961), 22 Ill. 2d 396, 176 N.E.2d 771.

Another factor to be considered in determining whether zoning of the subject property is arbitrary or capricious is the hardship on the property owner. We note that there is a significant difference of opinion on the part of the appraisers concerning the value of the subject property under the R4 zoning classification and its value under plaintiff's proposal. Assuming that the trial court believed the plaintiff's expert appraiser and felt that the property would be worth more under the proposed development, the record still reflects that the subject property can be economically developed in accordance with the R4 zoning classification. This factor would serve to mitigate any potential hardship of Skoufes' estate. In addition, plaintiff Fairfield entered into the contract to purchase the subject property with knowledge of the existing R4 zoning classification.

Although Fairfield's obligation to purchase the eastern half of the subject property was contingent upon the sellers obtaining a final decree of a court of competent jurisdiction granting a zoning change of the subject property to allow commercial development, such a decree is still subject to review by this court. We thus conclude that any hardship imposed on Fairfield is self-created and places Fairfield in a less favorable position to question the validity of the zoning ordinance. *Urban v. Madison County Building & Zoning Department* (1972), 8 Ill. App. 3d 775, 290 N.E.2d 324.

■■ After reviewing all of the evidence presented at trial, we acknowledge that there exists a debatable question as to the reasonableness of the zoning restrictions and that it is possible that the subject property could be zoned under a different classification. However, in such circumstances the zoning ordinance must prevail. (*Bluhm v. City of Chicago* (1969), 110 Ill. App. 2d 136, 249 N.E.2d 108.) For the abovementioned reasons and considering all of the evidence presented at trial, it is our decision that the finding of the trial court that the R4 zoning classification, as applied to the subject property, was arbitrary, capricious, and void and that said classification has no substantial relation to the public health, safety, morals or general welfare of the community is against the manifest weight of the evidence. We reverse that part of the trial court's order allowing plaintiffs to construct commercially on the eastern portion of the subject property.

Defendant, City of Chicago, next argues that the judgment of the trial court invades the legislative function. Defendant points out that the trial court ruled that the R4 zoning classification was void as applied to plaintiff's proposed development, the residential portion of which called for 228 dwelling units. Defendant then contends that the provision in the judgment restricting the number of dwelling units to 194, a use never proposed by the plaintiff, was equivalent to a rezoning of the property. Such action, defendant contends, requires legislative action and is beyond the court's power. In light of our above ruling that the trial court erred in finding that the R4 zoning classification of the subject property was arbitrary, capricious and void we see no need to discuss this contention.

We must, however, consider the propriety of the trial court's order allowing plaintiffs to construct 194 residential units on the western portion of the subject property. Plaintiff's proposal is divisible into a residential portion and a commercial portion. All parties throughout the course of this litigation treated the proposal as such and separate plans were submitted for each portion. Although we have ruled that the trial court erred in declaring the R4 zoning classification of the subject property was arbitrary, capricious and void, that part of the trial court's order limiting plaintiff's proposed residential development on the eastern portion of the

subject property to 194 units is in conformity with the R4 zoning requirements. This was indicated at trial by the following colloquy between the court and the attorney for the City:

"THE COURT: Does the City concede that the residential parcel is acceptable to the City subject to compliance with the unit requirements of the R4 zoning?

THE CITY'S ATTORNEY: Yes, sir. If I understand the Court correctly were the Plaintiff to reduce the height of those buildings from seven stories to six stories and have a development of 194 units, that would conform to the R4 density factors, yes. The City concedes that that would be completely proper. In effect were the Plaintiff to reduce the request from 228 to 194 units Parcel Two would drop out of this lawsuit because their proposed construction would conform to the existing R4 zoning."

■■ For the above reasons, we reverse that part of the trial court's order declaring that plaintiffs have a right to erect the office building as proposed on the eastern parcel, and we affirm that part of the order declaring that plaintiffs have the right to erect a multiple-family development on the western parcel not to exceed a maximum density of 194 dwelling units and in substantial compliance with the plans presented, and that plaintiffs or anyone claiming under them have a legal right to the issuance of building permits to so construct on the western parcel.

Order affirmed in part; reversed in part.

MEJDA and McNAMARA, JJ., concur.