GERALD R. DOTY *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF ROCKFORD, Defendant-Appellant.

Second District   No. 78-404

Opinion filed June 22, 1979.—Rehearing denied July 18, 1979.

WOODWARD, J., dissenting.

A. Curtis Washburn, Stephen W. McCarty, and John M. Nelson, all of Rockford Legal Department, of Rockford, for appellant.

Clifford E. Stoner and Robert A. Calgaro, both of Pedderson, Menzimer, Conde, Stoner & Killoren, of Rockford, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The city of Rockford appeals from the order of the trial court in a declaratory judgment action in which the trial court held the Rockford Zoning Ordinance to be unreasonable and void in so far as it precluded the plaintiffs from erecting and operating an office building on their property.

The plaintiffs operate a real estate agency and wish to construct an office building in which to carry on their real estate business at the site in question, which is at present occupied by an old residence the plaintiffs purchased in 1966. The property is presently zoned R-1. The plaintiffs used the residence as their business office until 1972 when Rockford passed an ordinance by which they were prohibited from using the residence as a business office. They then moved from the residence and thereafter rented it to tenants. It is apparently tenant occupied at the present time at a rental of $165 per month.

In 1977 the plaintiffs applied for a change in the zoning of the property in question from residential (R-1) to commercial zoning. The Zoning Board of Appeals denied their petition. They then applied for multiple-family residential zoning with a special permit for an office building. This also was denied. The plaintiffs then filed the present suit in declaratory judgment asking the court to declare the Rockford Zoning Ordinance unreasonable, arbitrary and unenforceable as to the property in question. The trial court, after a hearing, held the present residential zoning to be unreasonable and unconstitutional as applied to the plaintiffs' property and Rockford appeals.

In this appeal, the city of Rockford contends the plaintiffs failed to carry their burden of showing that the property in question is not properly zoned and that the present zoning is arbitrary and unreasonable, thus the plaintiffs did not overcome the presumption in favor of the validity of the zoning ordinance.

The immediate neighborhood of the plaintiffs' property is very largely residential. The property is situated on the southwest corner of Broadway and Eastmoreland Avenue. Recently, an extension of Parkside Drive was

constructed to meet Eastmoreland Avenue, at Broadway, which has generated considerable traffic along Eastmoreland and Parkside Drive through to Charles Street (running northwest and southeast, a block north of the corner in question). However, all of the property west of Eastmoreland and south of Broadway is residential and all the property east of Eastmoreland and south of Broadway is likewise residential with the exception of a commercial building at the southeast corner of Broadway and Eastmoreland. While the block immediately north of Broadway and east of Eastmoreland is commercial, on the west side it is strictly residential, except for the one office building on the southwest corner of Parkside Drive (which is Eastmoreland extended) and Charles Street. This one incursion of a nonresidential building a block away from the subject property was court ordered in 1968 for the purpose of a day-care center. Since then it has been converted to a law office, although still having the appearance of a landscaped residence.

The plaintiffs contend that the solid commercial area north of Broadway, east of Eastmoreland, has destroyed the residential character of the plaintiffs' property, making enforcement of the residential restriction on that property meaningless, unreasonable and arbitrary. The city, however, says that the one commercial building on the west side of Eastmoreland-Parkside Drive, in the block north of the subject property, is not enough to overcome the otherwise entirely residential character of the area. In its brief, the city takes the position that Eastmoreland-Parkside Drive constitutes a natural zoning boundary south of the arterial highway, Charles Street, and it is a proper prerogative of the municipality to retain that boundary in order to preserve the residential character of the neighborhood beyond it.

The trial court found that the property to the northeast of the corner of Eastmoreland and Broadway is heavily commercial and that the extension of Parkside through to Eastmoreland created a large volume of traffic past that corner. Apparently, from those facts, the court drew the conclusion that the character of the neighborhood had changed and was tending toward commercial. He also found that the erection and use of the proposed office building would not depreciate the value of nearby residences as such and that the gain to the public by retaining the present zoning would be small whereas the detriment to the plaintiff property owners would be substantial.

These findings of the trial court, together with the testimony of the plaintiffs' expert that in his opinion the highest and best use of the land is for a commercial building, constituted some basis for the court's decision invalidating the ordinance. We believe, however, that these findings do not overcome some more basic considerations of zoning law.

■■ We must, of course, begin with the basic premise that the presumption is in favor of the validity of the zoning restriction. Thus, in the case before us it is not sufficient for the plaintiffs to establish that the extension of Parkside Drive to meet Eastmoreland created a greater volume of traffic at the corner in question; nor that there is a concentration of commercial uses on the east side of Eastmoreland. As to the traffic going by the plaintiffs' property, it has been held in many cases and, indeed, is conceded by the plaintiffs, that a heavy volume of traffic, passing alongside of a property is not, in and of itself, sufficient to invalidate a residential zoning restriction. In *Bennett v. City of Chicago* (1962), 24 Ill. 2d 270, 273, the court said:

> "While the narrow strips off the south side of the 3 blocks to the west are devoted to commercial and multiple-dwelling purposes, plaintiff's lots partake of the character of the block of which they are a part. This residential character is not changed by the zoning classification and use of the narrow strip of lots across Irving Park Road, a thoroughfare 100 feet wide. Zoning must begin and end somewhere, and we have recognized that streets may form an appropriate boundary for zoning districts."

To the same effect is *Cosmopolitan National Bank v. Village of Mount Prospect* (1961), 22 Ill. 2d 463.

This court in two recent cases has rejected a similar contention and has upheld the use of a highway as a natural zoning boundary. (See *Gulf Oil Corp. v. County of Du Page* (1975), 24 Ill. App. 3d 954, and *Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993.) In the *Gulf Oil* case, in sustaining the concept of Butterfield Road as a boundary or buffer for zoning purposes, we cited the language of *Ryan v. County of Du Page* (1963), 28 Ill. 2d 196, where the court said, in disregarding the contention that property on the north side of North Avenue necessarily partook of the same commercial character as that on the south side,

> " 'We are of the opinion that plaintiff's property takes its residential character from the area to the west, north and east and that it is zoned in conformity with surrounding existing uses, a factor of paramount importance.' " *Gulf Oil Corp. v. County of Du Page* (1975), 24 Ill. App. 3d 954, 958.

In the *Du Page Trust Company* case, which also involved Butterfield Road, we again rejected the contention that the property on the north side of Butterfield Road necessarily took its character from the commercial establishments along the south side, saying that "* * * the area east of Park Boulevard and north of Butterfield Road is residential for a considerable distance, and is the area which influences the plaintiff's property and gives it a residential character." (31 Ill. App. 3d 993, 999.)

A recent vindication of this principle is found in the case of *Fairfield*

*Savings & Loan Association v. City of Chicago* (1976), 45 Ill. App. 3d 266, where the court after considering the plaintiff's contention that the character of the area should be determined for zoning purposes by the nearby commercial uses, said:

> "While the area in question is surrounded by a cornucopia of transportation systems, is in close proximity to commercial uses and O'Hare International Airport, and borders on an arterial roadway, the record reflects that the R4 zoning classification is in conformity with existing uses and zoning in the area. Although the above factors cited by plaintiff merit consideration in a determination of whether or not the zoning ordinance is arbitrary and capricious, they are by no means determinative. The mere fact that adjacent property is zoned for a less restrictive use does not render the zoning classification invalid. [Citation.] Similarly, the fact that there are commercial uses very near a residentially zoned area is not sufficient to render a zoning classification unreasonable or capricious." 45 Ill. App. 3d 266, 273.

In the case before us, it is undeniable that the property in question is situated in an area which is overwhelmingly residential in character. In our opinion, the fact that a road which was formerly a mere residential street along the east side of the property has now become an arterial "feeder" street for feeding traffic to Charles Street does not change the essential character of the neighborhood or the property in question, which remains residential. Nor is its residential character lost by reason of the small commercial shops along the east side of Eastmoreland-Parkside Drive—they do not impart their character to the plaintiffs' property so long as the west side of that street as well as the south side of Broadway maintain their overwhelmingly residential character. We therefore find unpersuasive the trial court's conclusion that the plaintiffs' property was given a commercial aspect by the commercial property along the east side of Eastmoreland and Parkside Drive. We regard that street as a legitimate zoning boundary in view of the residential integrity of the neighborhood having been maintained in conformity with that concept. Like many other courts we, therefore, reject the idea that we must impart a commercial character to the plaintiffs' residential property because of nearby commercial uses.

While the plaintiffs contend the harm to them is much greater by denial of their petition than is the benefit to the community and vice versa that the benefit to them, by granting the rezoning is much more than the harm to the community if it is granted, this argument is, we think, based on very short-term considerations. Assuming that certain zoning objectives are achieved or at least that certain strategic zoning considerations are preserved by holding the residential zoning line along the south side of Broadway and

the west side of Eastmoreland-Parkside Drive—can it be said that the community is not benefited thereby? We cannot measure the benefit but the very reason why a presumption of validity attaches to a zoning ordinance is precisely because it is supposed that some benefit accrues to the community as a whole from the enforcement of zoning restrictions. The relaxation of the zoning restriction in the present instance may have undesirable consequences for many other nearby residents who wish to preserve the residential character of their neighborhood. We cannot say, therefore, that there is no benefit to the community in retaining the present zoning.

Nor do we regard the present zoning as a hardship on the plaintiffs. While there was no contradiction of the plaintiffs' experts' testimony that the highest and best use from a financial viewpoint of the property was for a site for a commercial building, that is obviously true in almost any similar zoning case. As the court said in *Bolger v. Village of Mount Prospect* (1957), 10 Ill. 2d 596, 602:

> "It is true that plaintiffs' property would be worth more if zoned for commercial purposes. But that is true in nearly every zoning case in which the use of property is limited."

If the potential difference in economic value between the residential and commercial zoning was a sound argument in every case, it would be almost impossible to sustain the reasonable zoning boundaries anywhere. In the case before us, the plaintiffs gave credible evidence that their property was worth possibly $10,000 more if valued as a commercial site than under residential zoning, but we do not regard denial of commercial zoning as a hardship on the plaintiffs for that reason alone. The property is being used for the zoned use, and the plaintiffs are enjoying a return from it. This is the same zoning classification that obtained when they purchased the property. That the return is less than the maximum if there was a different zoning classification is an obvious economic fact, but that does not necessarily establish a hardship or an injustice.

■❚ ❚ We do not disregard the plaintiffs' arguments that the property is in such close proximity to heavy traffic and to commercial uses as to convert its original residential character to a lower category, but we find these arguments present, at the most, merely a difference of opinion with the zoning authorities. With equal persuasiveness the city can argue the importance and effectiveness of street boundaries as zoning limits in critical zoning areas and the overwhelmingly residential character of the neighborhood, to sustain the present zoning. This case, thus, does not present the clear sort of situation where the arguments for retaining the present zoning classification are weak and the restriction can only be upheld by relying on the presumption of legislative validity. Here the city has rational grounds for retaining the zoning restrictions, and the

plaintiffs' reasons for eliminating it are less than compelling. The most that can be said for the plaintiffs' case is that there is a reasonable difference of opinion as to the desirability of retaining the present zoning, based on different evaluations of the evidence. However, we believe the plaintiffs have not established in their case that the zoning restriction on their property does not bear any reasonable relationship to the safety, comfort, convenience or general welfare of the community, as is their burden (*Bennett v. City of Chicago* (1962), 24 Ill. 2d 270).

There is a short-range viewpoint and a long range viewpoint, one deriving from practical business considerations and the other based on overall planning; both are supported in part and controverted in part by the evidence and the exhibits presented at trial. It is, therefore, not a clearcut situation but rather the familiar one where a reasonable difference of opinion developed from the facts presented in evidence. In such a situation, the presumption in favor of the zoning ordinance is not overcome. *Duggan v. County of Cook* (1975), 60 Ill. 2d 107.

For the reasons stated above we therefore reverse the judgment of the circuit court of Winnebago County.

Judgment reversed.

LINDBERG, J., concurs.

Mr. JUSTICE WOODWARD, dissenting:

I must respectfully dissent. Plaintiffs sought multiple-family residential zoning with a special use permit for an office building which was denied by the city of Rockford. In this action plaintiffs sought a declaratory judgment; the trial judge declared that the single-family zoning classification was unreasonable as applied to plaintiffs' property and his order provided that plaintiffs would be allowed to use their premises for "a single-story office building" consistent with the site plan that had been submitted at trial. The standard to be applied by this court on appeal has been recently stated by our supreme court in *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, 516-17:

"The standard for review of zoning cases, as in other cases, is that the findings of the trial court will not be disturbed unless against the manifest weight of the evidence."

Application of this rule requires a review of the evidence presented at trial and an analysis of the findings of the trial judge based thereon.

The following diagram depicts the plaintiffs' property (hereafter "subject premises"), the surrounding neighborhood and the streets; the zoning is shown by designation of "CC" (Community Commercial), "R-1" (single family residence), and "R-2" (two-family residence).

The following facts about the general area are undisputed:

A. Subject premises have been zoned R-1 for a long time and this classification was retained in the current Rockford zoning ordinance enacted in 1973.

B. In 1973, Parkside Extension did not exist; at that time the property was occupied by a residence facing south on Broadway; Eastmoreland came to a "T" intersection at Broadway.

C. In 1976, the city moved the residence noted at B above and constructed Parkside Extension, a four-lane street divided by a median strip; at the same time Charles Street was altered to the east so as to require

a large portion of eastbound traffic to turn south onto Parkside Extension and thence east on Broadway.

D. In 1976, automatic stop-and-go signals were installed to regulate the traffic at the intersection of Broadway, Parkside Extension and Eastmoreland.

E. No evidence was presented that the proposed use of the subject premises would depreciate any of the surrounding residential property; no neighbors objected thereto.

F. The area between Broadway and Charles on the east side of Parkside Extension is known as the Colonial Shopping Center, consisting of a Pacemaker Food Store and other retail businesses.

G. On the south side of Broadway, starting at Eastmoreland and heading east, the uses are as follows: a coin and stamp store, a sporting goods store, a dental laboratory and a gasoline filling station.

H. The area south of the businesses noted in G is residential.

I. Except for a title company and law office at the southwest corner of Charles Street and Parkside Extension, the area west of Parkside Extension is residential.

J. In February 1978, the average daily traffic count (Monday-Thursday) on Broadway was 13,000 vehicles; on Parkside Extension, the daily traffic count was 9,000 vehicles. On Friday and weekends, the traffic count was projected as higher than the daily average. On Eastmoreland the average daily traffic count was 1500 to 1900 vehicles.

K. Mr. DeFillips, executive director of the City-County Planning Commission, described Parkside Extension as a major arterial street; he further stated that the 1973 City Plan did not show Parkside Extension.

L. The market value of the subject premises zoned R-1 is approximately $22,000; zoned for the proposed use, the market value is $32,200 or nearly 50% greater.

Additional uncontradicted facts pertaining solely to the subject premises are as follows:

A. In 1972, the monthly rent was $210; the current monthly rent is $165; the house is 50 years old. Plaintiffs testified that the noise and traffic made it difficult to keep tenants.

B. The residence adjacent to the west was 1.1 foot from the property line and the entire front yard was paved. The residence adjacent to the south was used as a Salvation Army parsonage.

C. That plaintiffs were prepared to spend approximately $100,000 to construct the single-story office building proposed.

The areas of dispute are considered next. The differences here lie primarily in the ultimate facts or conclusions to be drawn from the facts and testimony of the witnesses. The plaintiffs' experts, a planning consultant and a real estate appraiser, concluded that the subject premises

were in a transitional area where the trend was toward business uses; that the construction of Parkside Extension greatly increased noise and traffic; the traffic activity and the influence of the commercial uses to the north and east brought about this change. Plaintiffs' experts were of the opinion that the proposed use was the highest and best use of the subject premises. They stated that this use was compatible with the trend of growth, the traffic and that it was not detrimental to surrounding properties; that this use would serve as a buffer between the retail uses and the residential area to the south and west. They compared the proposed use as similar to that of the title company and law office located at the southwest corner of Charles and Parkside Extension.

Mr. Swanson, the senior planner for the City-County Planning Commission, testified for the city; in that capacity he had previously recommended against the use of the subject premises as proposed. It was his opinion the neighborhood was older, mature and stable; that the proposed use was an intrusion and that Eastmoreland was the logical boundary between the residential uses on the west side and the commercial uses on the east. He stated that allowing the proposed use would create a domino effect by being a basis for the further extension of commercial uses. He did not express an opinion as to highest and best use as he felt that the term was meaningless. The city also presented Mr. Jeffembruch, a local appraiser; he gave an opinion as to the value of the subject premises which conformed to the opinion of plaintiffs' appraiser; he was not questioned as to the highest and best use, and he stated he was not prepared to testify as to whether the proposed use would damage surrounding properties.

The evidence presented at the trial must next be viewed pursuant to the guidelines that our supreme court has prescribed in ruling upon the validity of a zoning ordinance. The relevant factors that the trial court may consider in determining the validity of a zoning decision were enumerated by the supreme court in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, in the specific use context. These factors are as follows:

1. The uses and zoning of nearby properties.

2. The extent to which existing zoning diminishes the property's value and the proposed zoning enhancing it.

3. The suitability of the property for the purposes permitted under the existing zoning.

4. The relative gain to the public as compared to the hardship imposed upon the property owner by the existing and the proposed zoning uses.

No one of these factors is controlling.

The trial judge made specific findings which may be summarized as follows: 1. that the property uses east and northeast of the subject premises is extensively commercial; that the former "T" intersection at

Eastmoreland and Broadway has been replaced by a major intersection; that Eastmoreland is no longer a logical zoning boundary because of the noise and heavy traffic; 2. that neighboring properties will not be damaged by the proposed use; 3. the present zoning diminishes the value of the subject premises because of the heavy traffic and character of the neighborhood; 4. the proposed use is suitable; it is the highest and best use; 5. the subject premises have been zoned residential for a long time but the property to the east has developed gradually as community commercial; 6. the proposed use of the subject premises will generate little traffic and any detriment therefrom is slight compared with the hardship to the plaintiffs; 7. the zoning restriction does not promote the health, safety and morals of the community; the gain thereby is nil.

On the basis of the above findings, the trial judge declared the present zoning classification invalid. The issue on this appeal is whether or not the evidence provides a basis for the above findings. It is my view that the evidence furnishes an adequate basis for the order of the trial court. Plaintiffs' land planner and real estate appraiser stated the area of the subject premises was transitional due to construction of Parkside Extension by the city; this opinion is supported by substantial increase in the traffic, the increased noise occasioned thereby and the presence of the traffic signals. Whether or not the area of the subject property is transitional or stable is actually the only factual area of dispute between plaintiffs' experts and the city's land planner who was a city employee of approximately eight months. Certainly the trial court had ample basis for concluding that the neighborhood was changing and that the use proposed by plaintiffs would provide a buffer between the retail establishments and the residential uses to the south and west. The majority state that the diminution in value of the subject premises caused by the zoning restrictions is not a hardship to the plaintiffs; they state that the property is being used as zoned and plaintiffs are "enjoying a return from it." The evidence shows the rent has decreased by about 25% since 1972 contrary to the inflation spiral. It is not realistic to expect plaintiffs to invest money in this property as a single family dwelling; the house immediately west is a little over one foot from the property line and its front yard is paved; the zoning restriction reduces the value of the subject premises by $10,000, while removal of the restriction will increase the value nearly 50 percent. Since the city created the change in the area by construction of Parkside Extension, the trial court had a logical basis to conclude that the previously existing zoning restriction was unreasonable.

The trial judge found that little benefit accrued to the community by the residential zoning of the subject premises. However, the majority conclude there is a benefit by holding the residential zoning line. Such a conclusion could be automatically advanced in support of every zoning

restriction; the important consideration is whether or not the restriction is reasonable under the particular circumstances presented. Our supreme court has acknowledged this proposition in *Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 546:

> "* * * zoning ordinances restricting a certain area to residential use have been held void as to property located in such area, but so situated in its relation to other commercial uses as to render it peculiarly unattractive and of little value for residential purposes."

Furthermore, the trial judge could logically conclude that the construction of an office building costing $100,000 on the subject premises would far exceed any possible community benefit resulting from continuation of the residential zoning restriction, particularly when there is no evidence that surrounding properties would be damaged.

The majority place great emphasis on the proposition that a street constitutes a natural zoning boundary, citing *Gulf Oil Corp. v. County of Du Page* (1975), 24 Ill. App. 3d 954, and *Du Page Trust Co. v. County of Du Page* (1975), 31 Ill. App. 3d 993. The facts of each of these cases involved the same intersection where only one corner was commercial and the remaining three corners were residential; furthermore, the proposed use in each case was much more intrusive since a gasoline filling station was sought in one case and, in the second, a retail shopping complex was proposed.

The Appellate and Supreme Court Reports have many zoning cases, and it is possible to find statements that support either side. Why do I write this dissent? It is my opinion that the proper standard of review is set forth at the beginning of this dissenting opinion. The same rule has again been reiterated in *La Grange State Bank v. County of Cook* (1979), 75 Ill. 2d 301. The majority make no mention of the standard for review and instead they stress the presumption of validity that attaches to a zoning ordinance; they conclude that the plaintiffs have not overcome this presumption, apparently since there was a conflict of expert opinion as to whether the area of the subject premises was transitional or stable. Here the trial judge concluded that the presumption of validity was overcome and having done so, it is the function of this court to analyze the evidence to determine if the evidence supports his findings by any reasonable construction. Since even the majority concedes that the trial court's findings provide "some basis" for invalidating the ordinance, the trial court's decison must be affirmed.

Careful review of the decision of the trial court shows that due consideration was given to each of the factors deemed critical in *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 46-47; all were weighed together, and the court made specific findings on each factor leading to the conclusion that the ordinance is unreasonable. It is the

burden of the defendant to persuade this reviewing court that the decision of the trial court was against the manifest weight of the evidence. The opinion in *Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 547, is appropriate at this point:

> "The determination of the trial court is, of course, always subject to review, but its findings should not be disturbed unless they are against the manifest weight of the evidence. [Citation.] Here the testimony was conflicting. The credibility accorded the witnesses, as well as the weight of their opinions concerning values, may well have been the determining factors in the trial court's decision. The position of the trier of facts is superior to that of the reviewing court in such situation. [Citation]."

In my opinion, the order of the trial court should be affirmed.