GENEVA RESIDENTIAL ASSOCIATION, LTD., *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF GENEVA *et al.*, Defendants-Appellees.

Second District   No. 78-389

Opinion filed October 31, 1979.

Gerald Sheridan, of Wheaton, and George E. Krippner, of Geneva, for appellants.

Stephen M. Cooper and Charles Radovich, both of Geneva, for appellees.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

This declaratory judgment action was brought by plaintiffs as adjoining landowners to challenge the validity of a Geneva ordinance granting the application of defendant James C. Pankow for a special use permit. The city's action allowed defendant Pankow to operate a restaurant in an area zoned for specialty shops and professional offices. The trial court entered judgment for defendants and plaintiffs have appealed.

Two main issues are presented for review. First, whether the trial

court erred in dismissing counts I, II, and III of plaintiffs' original complaint for failure to state a cause of action; and second, whether the trial court's decision that the Geneva ordinance was not unconstitutional as arbitrary, unreasonable, and without substantial relation to the public safety, morals, or welfare is against the manifest weight of the evidence. For the reasons stated more fully within this opinion, we hold that: (1) counts I and II of the original complaint properly alleged that the ordinance granting the special use was invalid due to noncompliance with statutorily mandated procedures; (2) the subject matter of count III is nonjusticiable; and (3) the trial court's decision on the amended complaint was supported by the evidence and was not manifestly against the weight of the evidence.

■■ The area involved in this case is that part of Geneva south of the courthouse and west of Third Street. As we have previously stated in *Johnston v. City of Geneva* (1976), 37 Ill. App. 3d 578, 579, 346 N.E.2d 444:

> "It is common knowledge that the area west of the Fox River in the City of Geneva extends through a coterie of specialty shops immediately to a fine residential area of beautifully maintained older homes."

The property for which the special use permit was granted is located on Fourth Street at the southeast corner of the intersection of Fourth and Campbell streets in Geneva's unique specialty shop area. (See exhibit 2.) It was purchased by defendant James C. Pankow in 1975 for $108,000. A building, formerly a residence, faces Fourth Street. The structure has not been substantially altered and retains its original residential appearance. The northern corner of the parcel consists of a gravel parking for 18 cars, with ingress and egress to the parking lot on Campbell Street. At the time of purchase, the building contained a camera store in the basement, a beauty shop on the first floor, and apartment tenants on the second floor. Initially, defendant Pankow intended to operate a book store on the premises.

The Pankow property is zoned B-3, which requires architectural review of plans and approval by the city council before any new buildings can be erected or before existing buildings can be structurally altered or extended. The use of property in a B-3 zone is restricted, generally speaking, to specialty shops, professional offices, and residential homes. (See exhibit 2, zoning map of Geneva.)

The area north and northwest of the subject property is zoned B-3 but the land is presently devoted to public use. The block directly north is the courthouse grounds. To the northeast is the courthouse parking lot and public defender's office.

To the east of the Pankow parking lot on Campbell are three

residences which have been converted to specialty shops and professional offices. Each has an office or apartment on the second floor. None of the residences appear to have any substantial exterior structure changes from their original residence configuration. All are zoned B-3 and are regular B-3 uses.

The property directly west and south of the Pankow property is zoned R-1 (residential). The Haskell residence is located at the corner of Fourth and Franklin and is contiguous to the Pankow parcel on the south. It is zoned R-1 and used as a single-family residence.

The Loomis property fronts on Franklin just east of the Haskells. The Loomis home is set in a large landscaped and wooded lot which extends from Franklin Street north, taking up most of the center of the block. The Loomis backyard is contiguous to both the east and south boundaries of the Pankow lot. Dr. Loomis has an in-ground swimming pool on the northerly end of his deep lot. The pool is located about 50 feet directly east of the existing Pankow structure. There is a fence on the lot line between Pankow and Loomis.

Across Franklin to the south of the Loomis and Haskell residences is a church and rectory presently zoned R-1.

The west side of Fourth between Campbell and Franklin is also zoned R-1. However, the building directly across the street from the Pankow property is used for offices. The record does not disclose how this nonconforming use came about. Next to it is a single-family residence used as two apartments.

Across Fourth Street and just south of the Pankow structure in R-1 zoning is the Culley residence which fronts on Franklin. The Culley backyard is across the street and just south of the front entrance to the Pankow structure.

On the Third Street side of the block are two large residences which are being used as specialty shops. Each has apartments on the second floor. No substantial structural changes have been made to these residential structures. There is also a women's dress store and an upstairs apartment in what was originally the coach house for the home now owned by Dr. Loomis. This structure located to the east of the Loomis house is on Franklin.

On December 15, 1976, defendant Pankow filed an application for issuance of a special use permit for the subject property. The application itself was a short, two-page document. It requested permission to operate a 156-seat restaurant and to build a single-story addition to the north and east portion of the existing structure. The proposed restaurant would be open during the evening hours. Because of limited parking available in the gravel lot on the Pankow property, employees and customers would have to seek street parking during the day and night. The proposed

addition would place the new kitchen about 20 feet from the Pankow-Loomis lot line, and the exhaust for the cooking facilities would be directed toward the Loomis swimming pool.

The Geneva Plan Commission then began consideration of the special use application filed by defendant. The procedures for approval of a special use are set forth in appendix D, article XIII, sections 31.2701-2706 of the Geneva Municipal Code. These sections state, in pertinent part:

"31.2702. Application

An application for a special use shall be filed with the building commissioner on a form prescribed by the building commissioner. The application shall be accompanied by such plans and data prescribed by the plan commission, and shall include a statement in writing by the applicant and adequate evidence showing that the proposed special use will conform to the standards set forth hereinafter. Such application shall be forwarded from the building commissioner to the plan commission with a request for a public hearing and report relative thereto."

"31.2704. Authorization

For each application for a special use, the plan commission shall report to the city council its findings and recommendations, including the stipulations of additional conditions and guarantees that such conditions will be complied with when they are deemed necessary for the protection of the public interest. * ´ * *"

"31.2705. Standards

No special use shall be recommended by the plan commission unless such commission shall find:

A. That the establishment, maintenance, or operation of the special use will not be detrimental to or endanger the public health, safety, or general welfare;

B. That the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood;

C. That the establishment of the special use will not impede the normal and orderly development and improvement of the surrounding property for uses permitted in the district;

D. That the exterior architectural appeal and functional plan of any proposed structure will not be so at variance with either the exterior architectural appeal and functional plan of the structures already constructed or in the course of construction in the immediate neighborhood or the

character of the applicable district, as to cause a substantial depreciation in the property values within the neighborhood;

E. That adequate utilities, access roads, drainage and/or necessary facilities have been or are being provided;

F. That adequate measures have been or will be taken to provide ingress and egress so designed as to minimize traffic congestion in the public streets; and

G. That the special use shall, in all other respects, conform to the applicable regulations of the district in which it is located, except as such regulations may, in each instance, be modified by the council pursuant to the recommendations of the plan commission."

After several hearings, the Plan Commission finally considered on January 10, 1977, whether or not the proposed special use met the standards set out in section 31.2705 of the Geneva Code. The minutes at that meeting were kept by a court reporter. The Plan Commission went through the separate subparagraphs of the standards and commented on each.

As to subparagraph B which relates to detriment to use and enjoyment and diminishing of value of adjacent property, the Plan Commission minutes state:

*"Par. B.* Mr. Riley felt propos. use would affect prop. values; Mr. Erday, Mr. Johnson, Mr. Pflaum and Mr. Ball were in agreement. Mr. Hackley stated he felt it was hard to tell whether any use will impair property values."

Wayne Heninger, comptroller for the City of Geneva, attended the January 10 Plan Commission meeting. He kept his own handwritten summary of the discussion on the seven standards for granting special uses at that meeting. His handwritten tabulation shows that five of the seven Plan Commission members present found that the special use would be injurious to use and enjoyment of nearby properties and would substantially diminish property values.

The Plan Commission, however, recommended by a vote of five to two that the special use be granted with conditions as to screening, garbage disposal, second story windows, etc. On January 31, 1977, the Plan Commission held a special meeting. The minutes of that meeting state:

"Chairman Shewalter advised those present that the special meeting was scheduled primarily for the purpose of approving the transcript of minutes of the public hearing held on January 10, 1977 on the petition of James Pankow requesting a special use under B-3 to operate a restaurant at 211 S. Fourth Street.

* * *

Mr. Erday advised that Mr. Riley was unable to be present tonight; however, he asked Mr. Erday to correct the statement made by Mr. Riley reported on page 3 under discussion, paragraph B to read as follows:

'Mr. Riley felt the proposed use may be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted. Messers. Erday, Johnson, Pflaum, Ball, and Hackley were in agreement. Mr. Hackley stated he felt it was hard to tell whether any use will impair property values.' "

Thereafter, a motion was carried that the January 10, 1977, Plan Commission minutes be approved and accepted as "the majority findings of the Plan Commission."

On February 7, 1977, the city council heard arguments of attorneys and citizen comments. After discussion, the council voted in favor of the special use for Pankow. There was one abstention.

The special use ordinance recited that the council gave due consideration to "the record made before the Plan Commission, the facts concerning the neighborhood as known to the members of the City Council after investigation, and of the arguments of counsel." The ordinance contained six conditions, including closing hours of 9:30 p.m. on Monday through Saturday, and 3 p.m. on Sunday.

Plaintiffs thereafter filed a three-count complaint in the circuit court of Kane County challenging the validity of the Geneva ordinance granting the special use permit on various grounds. This complaint was eventually dismissed in its entirety by the trial court, on the theory that each count failed to state a cause of action. The written order dismissing counts I and II specifically states that: "* * * neither count I nor count II alleges that the ordinance was, as to the Plaintiffs, arbitrary, unreasonable, or without substantial relation to the public health, safety, morals, or welfare." Plaintiffs then elected to file an amended complaint which, in substance, realleged the factual statements contained in counts I and II of the first complaint; however, it was amended to allege that the ordinance was invalid as arbitrary and unreasonable, as required in the trial court's first dismissal order. The cause then proceeded to trial. At the close of the evidence, the trial court upheld the validity of the Geneva ordinance, and plaintiffs appeal.

## I.

The first issue presented for our consideration in the case at bar is whether the trial court erred in dismissing counts I and II of plaintiffs' original complaint for failure to state a cause of action. It is a fundamental

rule of pleading that a complaint must contain sufficient factual allegations to state a claim upon which relief may be granted by the court. (*Fanning v. LeMay* (1967), 38 Ill. 2d 209, 212, 230 N.E.2d 182, 184; *Winston v. Zoning Board of Appeals* (1950), 407 Ill. 588, 594, 95 N.E.2d 864, 868.) However, an action should not be dismissed on its pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *White Way Sign & Maintenance Co. v. Montclare Lanes, Inc.* (1976), 42 Ill. App. 3d 199, 355 N.E.2d 632.

The dismissed counts of plaintiffs' original complaint essentially attacked the validity of the ordinance granting the special use on procedural grounds. In particular, count I alleged that, contrary to the express provisions of section 31.2705 of the local zoning ordinances, the Geneva Plan Commission had recommended granting the special use when it failed to find "* * * that the special use will not be injurious to the use and enjoyment of other property in the immediate vicinity for the purposes already permitted, nor substantially diminish and impair property values within the neighborhood." Count II alleged that, contrary to Geneva ordinance, the Plan Commission erroneously recommended granting the special use where the applicant had failed to introduce sufficient evidence that the special use would conform to the standards set forth in the Geneva Code.

On this appeal, defendants argue that counts I and II of plaintiffs' complaint were properly dismissed by the trial court because both counts erroneously predicate the invalidity of the ordinance granting the special use permit upon the alleged procedural deficiencies of the plan commission, whose functions are purely advisory and whose recommendations do not bind the city council. Defendants further point out that the special use was approved here by ordinance, as permitted by the Geneva zoning code; it is thus contended that such an ordinance, as a legislative act, is entitled to a presumption of validity and may be overturned only where unconstitutional as arbitrary, unreasonable, and without substantial relation to the public health, safety, morals and welfare.

■■ We believe defendants have misperceived the legal theory relied upon by plaintiffs in counts I and II of the original complaint. Plaintiffs do not attempt to attack the ordinance on constitutional grounds; rather, they contend that the city lacked authority to enact the ordinance granting the special use absent substantial compliance with the procedures required by both city ordinance and State statute. Such an attack is of course proper. The City of Geneva is not a home-rule unit and thus can exercise only those powers expressly delegated by the General Assembly or those that arise by necessary implication from expressly delegated powers. (Ill. Const. 1970, art. 7, §7; *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373

N.E.2d 1342.) Absent such authority, its enactments are void. See *Tavern Owners Association of Lake County, Illinois, Inc. v. County of Lake* (1977), 52 Ill. App. 3d 542, 367 N.E.2d 748.

■■ An examination of counts I and II of plaintiffs' original complaint clearly demonstrates that each alleges sufficient facts stating a cause of action on the theory that the ordinance enacted by the city is invalid because of a failure to comply with statutory requisites and the city's own ordinances. Count I alleges that the plan commission failed to find that the granting of the special use would not be injurious to the use of adjoining property and would not substantially diminish property values in the neighborhood. Such a finding is expressly required by section 31.2705 of the Geneva comprehensive zoning ordinance and by section 11—13—1.1 of the Municipal Code of 1961 (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—1.1), which states in pertinent part:

> "A special use shall be permitted only upon evidence that such special use meets standards established for such classification in the ordinances * * *."

Count II similarly alleges that the commission erroneously recommended approval of the special use although the applicant failed to adduce sufficient evidence at the commission hearing to warrant such a recommendation. If upon remand these allegations are shown to be correct, and the trial court determines that the city failed to substantially comply with the procedural safeguards required by statute and ordinance, then the ordinance approving the special use is invalid and void.

A review of the development of the special use as a zoning tool and the court decisions determining the authority of municipalities to permit special uses is pertinent to an understanding of our holding in the case at bar. The authority of a county to grant or deny a special use was first challenged in the landmark case of *Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 166 N.E.2d 601. A majority of the supreme court held that the granting of special use permits was within the permissible limits of the county's general zoning power under the appropriate enabling act. The court also held that the procedural requirements mandated for variances were not applicable to special uses as they were not specifically authorized by statute. However, the majority noted that the General Assembly could require by law such procedural safeguards.

In dissent, Justice House argued that municipally authorized "special uses" were invalid because they lacked specific statutory authorization and because no standards governing the approval of such uses had been promulgated, leaving the granting of special uses to the whim of the local legislature. (*Kotrich*, 19 Ill. 2d 181, 190, 166 N.E.2d 601, 606.) The views of the *Kotrich* dissent were reiterated when Justices House and Klingbiel

dissented in *Camboni's, Inc. v. County of Du Page* (1962), 26 Ill. 2d 427, 433-34, 187 N.E.2d 212, 216-17. Justice House also joined the special concurring opinion of Justice Klingbiel in *Ward v. Village of Skokie* (1962), 26 Ill. 2d 415, 419-26, 186 N.E.2d 529, 531-34.

The dissenting judges identified the following problems with the majority's holdings in these cases:

1. There was no express statutory authorization for the special use technique.

2. Consequently, there was no requirement that local ordinances establish adequate standards to guide the local body in its determination of whether to grant a special use, and the decision of the local body to grant or deny a permit was left solely to whim or caprice.

3. The decision of the local legislature to grant a permit was essentially immune to judicial review.

In particular, the dissenters objected to the vesting of quasi judicial powers in legislative bodies. As Justice Klingbiel stated:

"It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative but administrative, quasi-judicial, or judicial in character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government. I need not dwell at length on the obvious opportunity this affords for special privilege, for the granting of favors to political friends or financial benefactors, for the withholding of permits from those not in the good graces of the authorities, and so on. The rule is familiar enough that courts may not inquire into the motives or reasons on which the legislative body acted. (Citation.)

It is because of this immunity from review that legislative bodies must confine themselves to the prescribing of general rules. If they may undertake to confer upon themselves authority to decide what in fact amount to individual or particular cases, the foundations of our legal system will fast disappear.

* * * Legislative bodies are not equipped, except in a very broad and general way, to ascertain factual questions which depend upon evidence of individual circumstances. Their function is not to grant permits but to say what facts and conditions should warrant the granting of permits. (Citation.)

What is an application for special permit but a particular case? The granting or refusal of the permit does not lay down a rule or prescribe any conditions. It is simply a decision on a concrete set of facts, affecting the property of particular parties only. It is the

nature of the proceeding, not the identity of the body assuming to act in the matter, which should determine the necessity for standards. Otherwise basic constitutional protections can readily be circumvented by the simple expedient of placing quasi-judicial functions in a legislative body." *Ward*, 26 Ill. 2d 415, 424-25, 186 N.E.2d 529, 533-34.

In 1967, the Municipal Code was amended to incorporate the views expressed in the opinions of Justices Klingbiel and House. Section 11—13—1.1 (Ill. Rev. Stat. 1977, ch. 24, par. 11—13—1.1) of the code, which relates specifically to special uses, states in part:

"The corporate authorities may in its ordinances passed under the authority of this Division 13 provide for the classification of special uses. * * * A special use shall be permitted only after a public hearing before some commission or committee designated by the corporate authorities, with prior notice thereof given as provided in Sections 11—13—6 and 11—13—7. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefore may be subject to conditions reasonably necessary to meet such standards."

In 1969, the legislature further amended the Municipal Code zoning division by stating in detail the requirements for findings in variation cases and for the first time expressly requiring findings in special use cases (Ill. Rev. Stat. 1969, ch. 24, par. 11—13—11). Section 11—13—11 provides in part:

"Every variation or special use, whether made by the board of appeals directly, or by an ordinance after a hearing before the board of appeals, shall be accompanied by findings of facts and shall refer to any exhibits containing plans and specifications for the proposed use or variation, which shall remain a part of the permanent records of the board of appeals. The findings of facts shall specify the reason or reasons for making the variation."

When these amendments are considered in context with the House and Klingbiel opinions in *Kotrich, Camboni,* and *Ward,* the intention of the General Assembly in enacting these provisions becomes apparent. In essence, the legislature required the fact-finding process for municipal special use permits to be vested in an administrative agency. The authority of the agency to grant or to recommend granting a special use must be specifically set forth by ordinance; its decision must be based on evidence introduced by the applicant according to standards delineated by the local body. Furthermore, the agency—like any other State administrative agency—must make specific findings of facts. Thus, the

local legislature is removed from the fact-finding process, and the ad hoc granting of permits by the local legislature is eliminated.

Defendants' argument that the procedures employed by the city preceding the enactment of the ordinance are not subject to review and are not relevant to the validity of an ordinance is clearly incorrect. *Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 182 N.E.2d 219, presents a situation similar to that in the case at bar. In *Treadway*, plaintiffs filed suit to declare invalid amendments to Rockford's comprehensive zoning ordinance which rezoned certain property from residential to business. They contended that the ordinance was invalid due to procedural deficiencies before the zoning board of appeals, which recommended that the city council enact an ordinance approving the zoning changes, over the objection of plaintiffs. The governing statute provided that zoning amendments may be adopted by ordinance, but that no amendment could be enacted without a hearing before a committee designated by the city, and without sufficient notice to the general public. By ordinance, the city required certain procedures to be followed by those persons seeking zoning changes.

During the trial, plaintiffs contended that procedural irregularities before the zoning board deprived the board of the power to recommend the zoning change, and that absent a valid recommendation by the board, the city council could not properly pass the ordinance. Defendants contended that, since the board of appeals was acting in an advisory capacity, its recommendation could be given no final significance. The circuit court refused evidence offered as to the procedure before the board of appeals, ruling that such evidence was irrelevant to a determination of the ordinance's validity. The supreme court disagreed, stating:

> "* * * (W)e feel impelled to say that the trial court's view that what preceded the enactment of the ordinance is immaterial is clearly wrong. *It is obvious that when a statute prescribes certain steps as conditions to the enactment of an ordinance these steps must be substantially complied with,* and we have further held that where a general zoning ordinance includes additional procedural requirements for its amendment, not inconsistent with those of the statute, these requirements must also be complied with. (Citation.) Thus to say, as the trial court, in effect, did, that what preceded the passage of the ordinance by the city council is immaterial is obviously too sweeping a statement." (Emphasis added.) 24 Ill. 2d 488, 496, 182 N.E.2d 219, 224.

The cases relied upon by defendants are not persuasive. *Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 166 N.E.2d 601, is cited for the

proposition that an ordinance is not invalid where inadequate written findings were made by the plan commission. However, *Kotrich* was decided long before section 11—13—11 was added to the Municipal Code of 1961, which requires such findings. Similarly, *LaGrange State Bank v. County of Cook* (1977), 53 Ill. App. 3d 79, 368 N.E.2d 601, concerned a county special use. As plaintiffs point out, county special uses are not regulated by statute as are municipal special uses. Thus, *LaGrange State Bank* is simply irrelevant to the issues presented in this appeal.

In sum, we hold that counts I and II of plaintiffs' original complaint properly allege that the ordinance enacted by the city approving the special use is invalid due to procedural deficiencies by the plan commission. Hence, it was error for the court to dismiss these counts for failure to state a cause of action.

Plaintiffs further argue that the trial court erred in granting defendants' motion for judgments on the pleadings with respect to count III of plaintiffs' original complaint. This count alleged that two members of the plan commission and one city council member, all of whom voted in favor of granting the special use, had financial interests in a bank where defendant Pankow had obtained financing for his proposed restaurant. According to plaintiffs, the ordinance granting the special use was void because the relationship between the bank and the commission and council members constituted a direct conflict of interest, depriving them of a fair hearing and of due process of law.

■ In our opinion, count III of the complaint, absent an allegation of actual fraud, failed to state a cause of action, and hence the court below did not err in granting defendants' motion for judgment on the pleadings. As a general rule, "* * * the motives of the members of the municipal authority are not proper subjects of judicial inquiry." (*Anthony v. City of Kewanee* (1967), 79 Ill. App. 2d 243, 247, 223 N.E.2d 738, 740.) Thus, the allegation implicit in count III—that the city councilmen and plan commission members may have voted favorably on the special use permit application from a motive of financial self-interest—is irrelevant to the validity of the ordinance, and the legal theory espoused by plaintiffs in count III of their complaint is not justiciable.

A similar situation was presented in *Athey v. City of Peru* (1974), 22 Ill. App. 3d 363, 317 N.E.2d 294. In that case, the plaintiffs predicated the invalidity of amendments to a general zoning ordinance upon the fact that a member of the zoning board had a business relationship with the zoning petitioner and that the alleged conflict of interest prevented an impartial hearing before the board. In rejecting that contention, the court said:

"* * * [I]n determining the validity of a municipal ordinance, the court is not generally concerned with and has no jurisdiction to

inquire into the motives or to determine the propriety of the policy which prompted enactment of an ordinance. A recognized exception of this rule of abstention is that an ordinance may be impeached for fraud by persons injuriously affected by its application. [Citation.] Here, plaintiffs' complaint and arguments do not allege fraud. *A mere allegation of conflict of interest of a participating zoning commission chairman does not invalidate a final ordinance adopted by a city council * * *.*" (Emphasis added.) 22 Ill. App. 3d 363, 370, 317 N.E.2d 294, 299-300.)

We believe that the decision in *Athey* is controlling in the case at bar and consequently we hold that the court below did not err in granting defendants judgment on the pleadings with respect to count III of the original complaint.

## II

■■ Plaintiffs also argue that the approval of the special use permit was an unconstitutional deprivation of property in violation of the Federal and State due process clauses, in that the ordinance was arbitrary, unreasonable, and without substantial relation to the public health, safety, morals, or welfare. The test for determining the constitutional validity of a zoning ordinance is well established. As the supreme court stated in *Tomasek v. City of Des Plaines* (1976), 64 Ill. 2d 172, 179-80, 354 N.E.2d 899, 903:

> "An ordinance will be presumed to be valid, and the one attacking an ordinance bears the burden of demonstrating its invalidity. The challenging party must establish by clear and convincing evidence that the ordinance, as applied, is arbitrary and unreasonable and bears no substantial relation to the public health, safety or welfare."

The factors which should be considered by the trial court in determining the validity of a zoning ordinance are: (1) the existing uses and zoning of nearby property; (2) the extent to which surrounding property would be depreciated by the proposed use; (3) the suitability of the property for the purposes allowed by zoning; (4) the extent to which the reduction in value of the subject or surrounding property promotes the general public welfare; and (5) whether the detriment to the public by allowing the special use is outweighed by the hardship imposed upon the individual property owner. (See *Wright v. County of Winnebago* (1979), 73 Ill. App. 3d 337, 341, 391 N.E.2d 772, 775-76.) While the decision of the trial court is of course subject to review, its findings may not be reversed unless they are clearly against the manifest weight of the evidence. *Myers v. City of Elmhurst* (1958), 12 Ill. 2d 537, 547, 147 N.E.2d 300, 305-06.

At trial, plaintiffs basically argued that the restaurant use permitted by the ordinance was incompatible with the present character of the area and would be detrimental to the use and enjoyment of nearby residential properties. In particular, plaintiffs introduced evidence to show that a high-volume restaurant would generate traffic, noise and parking problems in a now-quiet residential neighborhood; that the noise, odors and smoke from the kitchen and exhaust equipment would substantially interfere with the use and enjoyment of the Loomis and Haskell backyards and with the Loomis swimming pool; that the presence of a restaurant would have a depreciating effect on the property values of nearby property; and that the highest and best use of the Pankow property was its present B-3 use without the special use permit for a restaurant.

Defendants contended, and the trial court specifically found, that the potential adverse impact of a restaurant on the area was substantially ameliorated by the conditions attached to the granting of the special use permit. These conditions restricted the operation of the restaurant as follows:

"(1) That the lot lines abutting adjacent residential properties be screened to a height of seven (7) feet and no windows in the public dining area or kitchen area shall overlook the abutting residential properties;

(2) That the proposed delivery area, garbage and storage collection areas be fully screened from the street and adjacent residential areas. That the garbage be stored in approved covered containers;

(3) That exterior lighting and parking lot lighting be of low intensity and shall not shine directly on adjacent properties. That the parking lot lighting fixtures be of a low (physically) design type;

(4) That the kitchen exhaust system be of such design that excessive cooking odors not be exhausted to adjacent properties and blower noises be kept to a minimum;

(5) That the restaurant business hours be restricted to require closing thereof to be not later than 9:30 p.m., Monday through Saturday, and 3:00 p.m. on Sunday;

(6) That the use of the separate door to the service bar area be restricted to emergency egress use only and all customer ingress and egress be through the front door of the restaurant."

The trial court also found that adequate parking would be provided or already exists nearby, and that traffic in the area would not be sub-stantially increased by the restaurant's operation. While acknowledging

that a difference of opinion existed on whether the value of adjacent property would be adversely affected, the trial court concluded that plaintiffs had failed to adduce the clear and convincing evidence necessary to overcome the presumption of validity of the challenged ordinance.

■■ On the record before us in the case at bar, we cannot say that the decision of the trial court is manifestly against the weight of the evidence. The evidence on the effect of the restaurant on the neighborhood was basically conflicting, and in such a situation, the presumption in favor of the zoning ordinance is not overcome. *Doty v. City of Rockford* (1979), 73 Ill. App. 3d 255, 261, 391 N.E.2d 586, 591.

For the reasons stated above, the order of the circuit court dismissing counts I and II of plaintiffs' original complaint is reversed, and the cause is remanded with directions to reinstate these counts of the complaint. On remand, the trial court is directed to permit the introduction of evidence showing substantial, rather than exact, compliance with the procedures required by statute and ordinance. If the court determines that procedural defects exist which result in substantial noncompliance with the governing statutes and ordinances, then the ordinance granting the special use should be declared void. We further point out that procedural errors occurring before the plan commission may be considered insubstantial if cured by the action of the city council; for instance, if the court determines that the plan commission failed to make a required finding, but the evidence shows that the city council reassessed the record and on its own investigation made the required finding, then the ordinance granting the special use should be upheld.

In all other aspects, the judgment of the Circuit Court of Kane County is affirmed.

Affirmed in part, reversed in part, and remanded with directions.

SEIDENFELD and RECHENMACHER, JJ., concur.

■■■■■■■■■■■■■■■■■■■■

EXCERPT FROM DEFENDANTS' EXHIBIT 5

CITY OF GENEVA ZONING MAP

(EXHIBIT 2)

PANKOW PROPERTY

RESIDENTIAL
-1
-2
-3
4

BUSINESS
B-1
B-2
B-3
B-4

MANUFACTURING
M-1
M-2
M-3

TRANSPORTATION

(EXHIBIT 2)