PAUL RODE *et al.*, Plaintiffs-Appellees, *v.* THE VILLAGE OF NORTHBROOK, Defendant-Appellant.

First District (4th Division)   Nos. 82—785, 82—810 cons.

Opinion filed April 5, 1984.

Clifford L. Weaver and Steven M. Elrod, both of Burke, Bosselman, Freivogel, Weaver, Glaves & Ryan, of Chicago, for appellant.

William V. Johnson and Robert L. Nora, both of Johnson, Cusack & Bell, Ltd., of Chicago, for appellees.

JUSTICE ROMITI delivered the opinion of the court:

Appellant village of Northbrook appeals from an order of the trial court requiring Northbrook to issue to appellees Paul Rode and Radio Station WVVX a permit for construction of a radio tower. The appellees had sought permission for construction of the tower by applying for a special use permit for a planned development and later by applying for a building permit (after appellees concluded that no special use permit was required). Northbrook contends that (1) certain provisions

of the Northbrook Zoning Ordinance barred acceptance of either of the applications; (2) a new trial is required because the trial court considered certain inadmissible documentary evidence; (3) even assuming that Northbrook was not barred from accepting one of the applications, Northbrook acted reasonably in so doing.

Because we find that Northbrook's zoning ordinance did bar acceptance of either of the applications we reverse the judgment of the trial court without reaching Northbrook's other contentions.

The evidence at trial established the following pertinent facts. The subject property, a triangular-shaped parcel consisting of about 18,000 square feet, is located at 322 Skokie Boulevard in the village of Northbrook. Pursuant to the Northbrook Zoning Ordinance the property is zoned in a B-3 commercial zoning district. The front of the property, representing the base of the triangle, is currently developed with a building housing Allen Catering, a business owned and operated by appellant Rode, who is also the beneficial owner of the land. Rode testified that his gross income from the catering business in 1980 was approximately $500,000.

On January 21, 1980, Rode and WVVX filed with the village of Northbrook a petition for a special use permit for a planned development, consisting of a 245-foot radio tower and a supporting concrete structure, to be constructed within four feet of the rear of the property. Prior to this time Rode had contracted with William E. Paar, Jr., the general manager of WVVX, to lease space to WVVX for the construction, subject to Northbrook's approval. Both Rode and Paar testified that it was on the advice of Samuel Lee, a Northbrook staff planner, that they framed their application as one for a planned unit development. Lee had informed them this was the only way to avoid a bar on having buildings dedicated to more than one primary use on the property. Northbrook's village manager, Robert Wiedaw, testified that he had advised this approach in order to circumvent another problem, Northbrook's building height restriction of 35 feet in B-3 districts. The Northbrook Plan Commission recommended to the Northbrook Board of Trustees that this special use be granted, also recommending that a variance be granted to permit the rear yard depth to be four feet rather than the required 25 feet. While the application was still pending before the board, Rode filed with Northbrook a building permit application. He testified that he did so because, on the advice of counsel, he had determined that the proposed radio tower would comply with Northbrook's zoning requirements without the necessity of obtaining the exceptions permitted for a special use. The building permit application did not include plans for

a supporting concrete structure and sought no rear yard variance.

On August 5, 1980, Rode received a letter from the Northbrook village manager, Robert Wiedaw, informing him that the board had informally determined that it would not grant the application for a special use permit for a planned development. On October 8, 1980, Wiedaw informed Rode that his building permit application for the radio tower would also probably be denied. Subsequently that application was returned to Rode.

This litigation was commenced in December 1980. At trial in addition to the evidence we have already summarized, there was a substantial amount of conflicting evidence presented concerning such matters as the adequacy of the radio tower's design, its effect on contemplated development in the area, and its effect on real estate values. Because of our disposition of this cause we need not evaluate that evidence.

On January 11, 1982, the trial court entered an order requiring Northbrook to issue a building permit "allowing for the construction of the radio tower and supporting concrete structure referred to in the building permit application filed by the Plaintiffs on July 17, 1980." On January 22 the trial court amended that order *nunc pro tunc* to also state that the issuance of the permit was subject to the relocation of the tower to meet the 25-foot rear-yard setback requirement. We cannot determine from this order or from the record which application the court found should be granted. Although the court referred to a building permit and to the July 17, 1980, date on which the application for a building permit was filed, the court also refers to the supporting concrete structure which was contemplated only in the original application for a special use permit for a planned development. Also the reference to the rear-yard setback requirement suggests that the court was referring to the special use application because only in that application was a variance sought from that restriction. Because of the confusion on this issue our review will be predicated on the assumption that the order can be construed to require granting either of the applications.

As we have already noted the first application filed by Rode was for a special use permit for a planned development. Rode contends that he was advised by a Northbrook planning official to apply for a planned development because only planned developments could have more than one principal building. (Defined in the ordinance as "a non-accessory building in which a principal use of the lot on which it is located is conducted" (Art. III(B) (15) of the Northbrook Zoning Ordinance).) Northbrook concedes that it advised Rode to seek a special

use permit for a planned development, but contends that this was in order to circumvent another restriction, the 35-foot limitation on building heights in areas zoned B-3. (An ordinance provision entitled "Building Bulk Limitations" provides that in a B-3 district "*** in no case shall the building height exceed 3 stories or thirty-five (35) feet" (Art. IX(B)(4)(f))). Another ordinance provision permits the board of trustees, upon the recommendation of the plan commission, to authorize exceptions to the applicable bulk regulations in the case of planned development "*** provided that the Plan Commission shall find *** (5) That along the periphery of such planned development yards shall be provided as required by the regulations of the district." (Art. VI(7)(d)(5).) A third ordinance provision specifies that the rear yard depth should be 25 feet. Art. IX(B)(f)(e).

■ But in order to qualify as a special use for a planned development a proposal would in any event have to meet the zoning ordinance criteria established for that classification. (Ill. Rev. Stat. 1981, ch. 24, par. 11—13—1.1; *Geneva Residential Association, Ltd. v. City of Geneva* (1979), 77 Ill. App. 3d 744, 397 N.E.2d 849.) The Northbrook criteria for a planned development are set out in the ordinance as follows:

"ARTICLE VI 7:    PLANNED DEVELOPMENT:

(a) Defined: A planned development is a use of land containing two or more buildings which offer benefits to the general welfare beyond those required by this Ordinance or other law, and which use of land

(1) will contain or provide amenities not otherwise required by law, including but not limited to provisions for common open space, recreational facilities, or specific design, engineering, architectural, site planning or landscaping features; or

(2) will establish yards or other open space greater than the minimums required by law, and/or will provide for bulk of structures and density of development less than the maximums permitted by law; or

(3) will provide screening or other facilities which benefit neighboring property or the public beyond those otherwise required by law."

Neither at trial nor on appeal has Rode contended that he even attempted to establish that his proposal would have provided any of these benefits so as to qualify it as a planned development. Rode contends that his proposed project did not constitute a second principal building and therefore it was not necessary to frame his proposal as a

planned development and the planned development criteria became "superfluous." We evaluate the merits of Rode's contention on the principal building issue (as well as his contention that the height requirement was inapplicable) in our subsequent discussion of Rode's building permit application. But without regard to those contentions, it is clear that Rode is ignoring the fact that he did apply for a special use permit as a planned development. He never sought to amend his application to eliminate this characterization and simply make it a special use application. We therefore hold that Northbrook correctly rejected this application because it did not comply with the criteria for a planned development.

Rode's application also sought a variance from 25 feet to four feet in the rear-yard requirement. This presents a related basis for Northbrook's rejection of the application. It is apparently undisputed that only the Northbrook Zoning Board of Appeals could grant a variance in the rear-yard requirement and Rode never sought such a variance from that body. Thus the Northbrook Board of Trustees did not have the authority to grant the application for a special use permit to the extent that it included this request for a variance in the rear yard requirement. We would also note that the board of trustees was only authorized to grant an exception to the height requirement if the rear yard requirement was satisfied, as it set out in article VI(7)(d)(5) which we have previously quoted.

The trial court apparently attempted to avoid the problem of the rear yard requirement by specifying in its order (as amended *nunc pro tunc* on January 22, 1982) that issuance of the building permit was subject to the relocation of the radio tower to meet the 25 foot rear-yard setback requirement. The parties have not addressed whether this proviso could properly permit the trial court to conclude that an otherwise proper rejection of the application was rendered improper by retroactively eliminating the impediment by judicial decree. But even assuming the order properly eliminated that basis for Northbrook's decision the village was justified in its denial of the application because of the failure to comply with the criteria for a planned development.

Rode's application for a building permit was submitted on the theory that he was not required to seek special use exemptions from the regulations. Apparently that application was never formally rejected but Northbrook informally advised Rode that it probably would not accept it and the application was returned to him. Rode has never challenged the validity or reasonableness of the restrictions on height, on principal buildings, or on rear-yard setbacks. He contends only that

the restrictions did not apply to his proposal. If they did apply, as Northbrook contends, then it is clear that the building permit was also properly denied.

Rode's proposed radio tower was to be 245 feet high. Northbrook contends that its ordinance provision limiting building height to 35 feet barred this tower. Rode contends that the tower was a structure, not a building, and as such was not subject to a height limitation on buildings. The pertinent definitions are contained in article III of the Northbrook Zoning Ordinance:

"ARTICLE III
RULES AND DEFINITIONS

In the construction of this Ordinance, the rules and definitions contained in this Article III shall be observed and applied, except when the context clearly indicates otherwise.

A. Rules

6. The word "building" includes all other structures of every kind, regardless of the similarity to buildings. (Article III—3, Northbrook Zoning Ordinance.)

B. Definitions

11. A BUILDING is any structure built for the support, shelter or enclosure of persons, animals, chattels or movable property of any kind and which is permanently affixed to the land.

87. A STRUCTURE is anything erected, the use of which requires more-or-less permanent location on the ground, or attached to something having permanent location on the ground."

█ We find that article (III)(A)(6) is controlling. Although buildings and structures are subsequently separately defined, the clear intent of this provision is that a reference to a building is to be construed as also referring to a structure. In choosing between two possible constructions of a statute or ordinance courts will act to avoid a construction producing absurd results. (*Illinois National Bank v. Chegin* (1966), 35 Ill. 2d 375, 220 N.E.2d 226; *Balmes v. Hiab-Foco, A.B.* (1982), 105 Ill. App. 3d 572, 434 N.E.2d 482.) If we were to adopt Rode's construction it would lead to the absurd conclusion that Northbrook has set no height restriction on structures erected in a B—3 district. Rode notes that in the ordinance provision stating that radio towers are permitted uses in B—3 districts no height restriction is given:

"ARTICLE IX
BUSINESS DISTRICTS

B. DISTRICT REQUIREMENTS
    4. B3 — Commercial District
        (a) Permitted Uses
            (32) Radio and television studios, stations, and towers
            for transmitting and receiving."

But that provision also refers to radio stations as permitted uses. Thus by Rode's construction such stations, although indisputably constituting buildings, would also be exempt from the height restriction contained in article (7)(d). Clearly that restriction was deemed to apply to the permitted uses set out in article IX without the necessity of repeating it in every listing.

Finally on this point Rode notes that in August 1980 Northbrook amended its building height restriction to provide for an exception "*** when expressly authorized pursuant to a Special Use Permit." Rode contends that because a notice relating to this amendment was published July 17, 1980, the same day he filed his building permit application (an application premised in part on the contention that his radio tower would be a permitted use without any need for a special use application), it was intended to block him by transforming what had been a permitted use into one requiring a special use permit. This contention is without merit. The amendment could not have been in response to Rode's building permit application because the record establishes that the first notice of the proposed amendment was published in June 1980, thus antedating Rode's application. Furthermore if Northbrook had believed the pre-amendment restriction did not apply to structures and wished to avoid Rode's use of that omission, they would have amended the provision to specifically include structures. Instead the amendment only made it easier to obtain an exemption from the height restriction by providing that such exemption could be obtained by a special use application. As we have noted the only way to obtain such an exemption prior to that time was by applying as a planned development. The reason for the amendment was clearly set out in the testimony of Robert Wiedaw, the Northbrook village manager. He testified that as the result of Rode's initial application for a special use as a planned development, the board of trustees recognized the need to expand the manner in which a height exemption could be obtained.

Because we have found that the height restrictions were applicable to Rode's proposed tower, the board of trustees was justified in rejecting his building permit application on the ground that the radio tower would be in violation of that height restriction.

■ A second basis asserted by Northbrook for its rejection of the

building permit application is that it violated the restriction on having only one principal building on a lot. Article IV(E) of the ordinance provides:

> "NUMBER OF BUILDINGS ON A ZONING LOT. Except in the case of planned developments, not more than one principal detached building shall be located on any zoning lot in any zoning district nor shall a principal detached building be located on the same zoning lot with any other principal building in any zoning district. For the purpose of this paragraph, two or more buildings joined by a fence, canopy, freestanding wall or other nonfunctional connection shall not be considered to be one principal detached building. No structural group containing two or more upward projections shall be considered a single building unless all such upward projections are joined by elements of the structural group at least half as high as the tallest upward projection."

Article III(B)(15) defines a principal building as "a nonaccessory building in which a principal use of the lot on which it is located is conducted." Again Rode contends that this restriction was intended to apply only to buildings and not to a structure such as his proposed radio tower. Utilizing the same definitions cited earlier, we conclude that the word building in this provision was intended to include structures, as set out in article III(A)(6). Clearly the intent of this provision is to restrict the principal uses to which a lot is placed. To say that a second principal use would be permitted in the case of a structure but not a building would detract from that purpose.

The final basis for denial of the building permit application asserted by Northbrook is that it was not in compliance with the 25-foot setback requirement for rear yards. As we have previously noted, a variance from that requirement could only be granted by the zoning board of appeals and no such variance was requested from them. However because the building permit application did not request such a variance we do not find this to be a proper basis for denial of the permit. In any event the other proper bases that we have discussed amply supported the denial of this application.

The judgment of the trial court is reversed.

Reversed.

LINN, P.J., and JOHNSON, J., concur.